## ROBERTS *vs.* SYKES.

Where stock is pledged as security for the payment of a note, the pledgor's equitable action to redeem the stock accrues or commences when the note becomes due; and if such action is not brought within ten years from that time, it will be barred by the statute of limitations.

Such a case comes within the section of the revised statutes relative to bills for relief, in cases of trusts not cognizable at law, &c. (2 *R. S.* 301, § 52.)

The court will not, for the purpose of relieving a pledgor from the statute of limitations, assume, in the absence of any allegation or proof on the subject, that there was an agreement between the parties, that the pledgee should keep the stock until he should have repaid himself out of the dividends and proceeds.

The *legal* remedy of a pledgor, by trover or otherwise, is limited to six years after the maturity of the note, for the payment of which the property is pledged, *it seems.*

THIS was an equitable action, brought by a pledgor against the personal representatives of the pledgee, for the redemption and reassignment of the stock, and for an account of the receipts and disbursements of the pledgee while the holder of the stock. The defense set up in the answer was the statute of limitations. The trial was by the court.

*T. Burrall,* for the plaintiff.

*F. R. Tillou,* for the defendants.

SUTHERLAND, J. The plaintiff, on or about the 3d day of April, 1840, gave his note to John B. Desdoity for $500, with interest, payable at six months, and at or about the time of the making and delivery of said note transferred to Desdoity absolutely, in terms, on the books of the company, twenty shares of the capital stock of the Manhattan Gas Light Company; and at the same time Desdoity gave the plaintiff a receipt for the twenty shares of stock, stating that the same was received as collateral security for the payment of the note, and containing an express promise on the part of Desdoity to transfer the shares of stock to the plaintiff,

on payment of the note. The plaintiff did not pay the note when it became due, nor ask for a re-transfer of the stock, and Desdoity retained it. When the stock was tranferred to Desdoity, only $27 per share had been paid on it, and it was subject to a call of $23 per share, on the payment of which it would be full stock. This call was made on Desdoity, as the holder of the stock, and he paid the $23 per share, making $460. Subsequently there were, from time to time, three several increases of the stock, or additional stock declared and distributed among the holders of the original scrip; so that each stockholder, at each increase, received as many shares as he then held. Desdoity, as the holder of the twenty shares of original stock, took this increase or additional stock, and after having, in 1854, transferred to third parties forty shares thereof, had, in 1855, at the time of his death, forty shares of stock. The first increase was in 1847, the second in 1852, and the third in 1855. Desdoity never had any stock in the company, which did not grow out of the stock so transferred to him by the plaintiff. He from time to time received dividends upon the stock, and from time to time paid various sums, for calls, and on account of the new scrip.

It sufficiently appears from the proofs that after deducting the $500 note of the plaintiff, and the interest, there would have been, at the time of Desdoity's death, in November, 1855, a considerable balance in his hands, over and above the disbursements and payments made by him on account of the stock.

There is no allegation in the complaint, nor is there any evidence, that the plaintiff ever paid, or offered to pay, the note, or demanded the note or a transfer of the stock, otherwise than that it is alleged in the complaint that on or before the 1st of July, 1852, Desdoity had received, in dividends on the stock and from sales of portions thereof, over and above what he had paid for installments or calls, more than sufficient to pay the $500 and the interest thereon; and

otherwise than the demand in this action for a transfer of so much of the stock as Desdoity held at the time of his death.

It is not alleged, nor does it appear, that the plaintiff ever, at any time, interfered with, or objected to, Desdoity's disposition of the stock or his receipt of the dividends; or ever called upon him to account for the stock, or the proceeds, or income thereof; or that he has ever, since the $500 note became due, claimed the stock, or the results or proceeds thereof, otherwise than by this action.

These are the material facts of this case, as they appear from the pleadings and proofs before me. The plaintiff asks that an account be taken and stated of the receipts and disbursements of Desdoity in his lifetime, as the holder of the twenty shares of stock; and that so much of the stock as he held at the time of his death, be reassigned to the plaintiff by the defendants, his personal representatives; and that the balance of moneys found in their hands, with interest, be paid to the plaintiff. The defendants, in their answer, setting up and insisting upon the statute of limitations in bar of the plaintiff's right to bring the action, the question is, shall there be a reference to take and state the account, as asked for by the plaintiff? Or is the statute of limitations a complete bar to the plaintiff's right of action?

After giving this question a careful examination, I cannot see why the statute of limitations is not a complete bar to the plaintiff's right of action. The note for $500, the receipt of Desdoity, and the transfer of the stock on the books of the company, may be considered but as parts of one instrument or transaction, and taken together, as showing the intent of the parties, and the legal effect and operation of the arrangement. So considered, they show that the stock was transferred to Desdoity as a pledge, and not by way of mortgage. (*McLean* v. *Walker*, 10 *John.* 472. *Cortelyou* v. *Lansing*, 2 *Cai.* 200.)

The time for the redemption of the pledge was fixed by the contract between the parties. The note was payable six months

after date, and the stock was pledged for the payment of the note. The express promise of Desdoity, in his receipt, to re-transfer the shares of stock to the plaintiff on payment of the note, is precisely such a promise or duty as the law would have implied from the fact of the pledge, had the receipt contained no such express promise; and it, therefore, does not affect the transaction, or the rights of the parties. The absolute transfer of the stock, on the books of the company, is qualified by the receipt, and did not prevent such transfer operating as a pledge between the parties.

The stock, then, having been transferred to Desdoity as a pledge for the payment of the note, what were the rights of the respective parties? The transfer, as a pledge, did not transfer the plaintiff's general right of property in the stock; but the same remained his, after the transfer, subject to Desdoity's right of possession until the note was paid, and other special rights as pledgee. When the note became due, the plaintiff had a right to redeem the stock by paying the note; and upon paying or tendering the amount due on the note, if Desdoity refused to re-transfer the stock, the plaintiff had a right, by bill in chancery, to enforce such transfer. Had the thing pledged been an ordinary chattel, a watch or horse, the plaintiff would also have had a remedy at law, by an action of trover or replevin; and perhaps he would have had a remedy at law in this case; but it is not necessary to inquire as to that. It is sufficient in this case, to say and admit, that the pledgor had a right in all cases to redeem his pledge by bill in equity, on paying or tendering the debt for which the thing was pledged; and that to give him this right of redemption he was not obliged to pay or tender the debt on the precise day, or at the precise time fixed for the redemption of the pledge, *but could do it afterwards.*

As the pledgor had this right to redeem by bill in equity, so the pledgee, his debt not being paid, had a right by bill in equity to foreclose the pledgor's right of redemption, or to sell the pledge at public auction, giving the pledgor notice of the

time and place of sale, and thus get his money, and cut off the pledgor's right of property and of redemption. (*Cortelyou* v. *Lansing,* 2 *Cai. Cas. in Er.* 200. 2 *Kent's Com.* 582, *5th ed.* 4 *id.* 138. *Brownell* v. *Hawkins,* 4 *Barb.* 491.) The pledgee could also, without resorting to his pledge or collateral, bring an action at once, for his debt.

These were the legal rights of the parties to this transaction when and after the note became due, and were the legal rights of them or their representatives when this action was commenced, except so far as barred or taken away by the statute of limitations. But the parties did not choose to exercise any of these rights as pledgor or pledgee. The plaintiff never paid, or offered to pay, the note, and never demanded a re-transfer of the stock; and Desdoity or his representatives have never given the plaintiff notice to redeem the stock, or of a sale of the same, or undertaken to foreclose the plaintiff's right of redemption. The plaintiff kept, and has, Desdoity's receipt, and Desdoity in his lifetime kept, and his representatives have, the plaintiff's note; and it does not appear that a word has ever passed between the parties about the stock, or its re-transfer, or the payment of the note, or the rights of the parties under or growing out of the original transaction, since the transfer of the stock to Desdoity, and the execution of the receipt, by him, to the plaintiff.

We must presume, I think, that the parties intended to let the statute of limitations settle their rights; or, that, in fact, they settled them themselves, as might be inferred from their mutual acquiescence and silence. I think the statute of limitations has so settled their rights that the stock and its proceeds are left in the hands of Desdoity's representatives, without any remedy or right of action on the part of the plaintiff.

As to the plaintiff's *legal* remedy by trover or otherwise, if he had any, I think it was limited to six years after the maturity of the note; but if he had a right to pay the note,

and demanded a re-transfer of the stock at any time within six years after the statute of limitations had attached on the note, it was barred long before this action was commenced ; the note falling due the 9th of October, 1840, and this action having been commenced on the 16th of December, 1856.

As to the plaintiff's right of redemption by bill in equity, it is unnecessary to inquire whether there was any limitation, or what was the limitation of such right, at common law, or before the revised statutes. It is sufficient to say, that by section 52 of article 6 of the title of the revised statutes, relating to the time of commencing actions, (2 *R. S.* 301,) "bills for relief in case of the existence of a trust not cognizable by the courts of law, and in other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue, *and not after."*  This action would fall within the latter clause of that section. (*Caulkins* v. *Caulkins,* 3 *Barb.* 305,) This section is positive and certain, and even prohibitory. The bill must be filed within ten years after the cause of action accrues, *and not after,*  The limitation by section 97 of the code would be the same ; but the limitation by the revised statutes applies to this case, because the plaintiff's right of action, if he had one, accrued before the code went into operation. (*Code,* § 73.)

I think the plaintiff's equitable action to redeem his stock accrued or commenced on the 9th of October, 1840, when the note became due, and that the ten years given to him by the statute to file his bill expired on the 9th of October, 1850. But supposing the ten years' limitation did not commence running against his equitable right until the six years' statute of limitation in his favor had attached on his note, which was on the 9th of October, 1846, even then his ten years expired on the 9th of October, 1856, more than two months before the commencement of this action.

In any aspect of the case, it would appear that the plaintiff's equitable right to redeem by action, was barred by the statute.

Roberts *v.* Sykes.

The theory of the plaintiff's complaint probably is, that the statute did not commence running against him until Desdoity had received, from dividends and proceeds of the stock, over and above what he had paid for calls or installments thereon, sufficient to pay the note and interest. If this were so, we could not say whether the statute of limitations had attached or not, until an account is taken of the receipts and disbursements of Desdoity and his representatives, on account of the stock.

This view of the question assumes a new arrangement or agreement between the parties, by which Desdoity was to keep the stock until he paid himself out of the dividends and proceeds ; but such new agreement is neither alleged in the complaint nor proved ; and I do not feel authorized to presume it, from the facts in this case, for the purpose of relieving the plaintiff from the statute of limitations. And besides, perhaps such a presumption would not be any more consistent with, or follow from, such facts, than a presumption that at the time, or soon after, the note became due, the parties mutually agreed that Desdoity should keep the stock as his own, to pay the note, the value of the stock then being about the amount of the note, and being liable to the call for $460 to make it full.

But I feel obliged to decline making any presumptions in this case, and to decide against the plaintiff's right of action, on the ground of the statute of limitations, alone.

The defendants must have judgment, with costs.

[NEW York SPECIAL TERM, April 4, 1859. *Sutherland*, Justice.]