## BAILEY v. DREW et al.

*(Supreme Court, Special Term, New York County.  July 14, 1888.)*

PLEDGE—RIGHTS OF PLEDGEOR—ASCERTAINMENT OF AMOUNT DUE.
    A pledgeor's right to have ascertained the amount due on the obligation, and to recover possession of the pledge on payment thereof, continues until his title is divested by a lawful sale, and passes to his assignee in bankruptcy; and neither Rev. St. U. S. § 5057, providing that all suits by or against an assignee in bankruptcy shall be commenced within two years after the cause of action accrued, nor the New York statute of limitations, affects such right.[1]

Action by Isaac H. Bailey, as assignee in bankruptcy of Daniel Drew, against Daniel Drew, Chamberlain, Farmers' Loan & Trust Company, and others, to have ascertained the amount due on a pledge of bonds by said Drew to Chamberlain, and for possession of the same on payment of the amount.

*S. F. Prentiss, W. G. Choate,* and *George W. Cotterell,* for plaintiff. *Dennis McMahon* and *Samuel A. Noyes,* for Chamberlain. *Turner, Lee & McClure,* for Farmers' Loan & Trust Company.

INGRAHAM, J.  On the 24th of November, 1873, the defendant, Chamberlain, was the owner of a note made by Daniel Drew, payable on demand for the sum of $118,297.54, and on that day there was delivered by Drew to Boyd for Chamberlain 168 bonds of $1,000 each, and of the market value of about $120,000.  The transaction was between Drew, the maker of the note, and Boyd, acting on behalf of Chamberlain.  Drew was about making an assignment or transfer of a large amount of bonds and other securities to his son, William H. Drew, and Boyd insisted that Drew should protect Chamberlain. Drew finally consented that the 168 bonds should be set aside for Chamberlain, and Boyd told Drew that the bonds were set aside as security for the note. Not a word appears to have been said about the payment of the note.  The note itself was not delivered to Drew, but was returned to Chamberlain, and Chamberlain subsequently indorsed upon the note the payments of interest down to 1876.  The note was produced by Chamberlain on the trial.

On these facts it is clear that the note was not paid by the delivery of the bonds to Chamberlain.  Nor was the obligation of Drew to pay the note affected, but the bonds were delivered as collateral security for the payment of the note.  The relation of bailor and bailee was thus created, and such relation existed at the time that Drew was adjudicated a bankrupt and plaintiff was appointed his assignee.  By the pledge of these bonds as security for the notes, the title to the bonds did not pass to the pledgee.  The title remained in the pledgeor until it was divested by a sale upon notice or by judicial proceeding.  *Markham* v. *Jaudon,* 41 N. Y. 235; *Stearns* v. *Marsh,* 4 Denio, 230.  On Drew being adjudicated a bankrupt, and on the assignment of his property to the plaintiff, the title to the bonds passed to the plaintiff, and he became the owner of the bonds, subject to the special property in Chamberlain as pledgee.  Until the pledgeor's title had thus become divested, he had the right to the possession of the bonds on payment of the amount due to the pledgee, and interest, as on the payment of that amount the special property which the pledgee had in the bonds ceased, and the right of possession became merged in the legal title.  This right to redeem continued until the title of the pledgeor was divested either by the sale on notice or by legal proceedings. The enforcement of this right depended upon the ownership of the bonds, and the statute of limitations restricting the time in which legal proceedings must be commenced does not limit this right of redemption, for by such redemption

---

[1] As to when a cause of action accrues so as to set the statute of limitations in motion, see Ariail v. Ariail, (S. C.) 7 S. E. Rep. 35, and cases cited in note.

the special property of the pledgee ceased, and as the title of the pledgeor cannot be divested except by a sale on notice or by legal proceedings, his title to the property remains unaffected by the lapse of time until the pledgee takes the necessary proceedings to divest it. As an incident to this right of redemption, the pledgeor has the right, where the amount due on the obligation to secure which the pledge was given is uncertain, to come into a court of equity and ask to have the amount ascertained, and on payment of such amount to recover the possession of the pledge, (*Kemp* v. *Westbrook,* 1 Ves. Sr. 278,) and that is the right plaintiff seeks to enforce in this action.

The defendant pleads the statute of limitations, and whether or not that action is barred by the statute is the main question to be determined. The defendant relies—*First,* upon the provisions of the bankrupt law, which provide for actions by and against assignees in bankruptcy. That provision is as follows: "No suit, either at law or in equity, shall be maintained in any court between an assignee in bankruptcy and a person claiming an adverse interest touching any property or rights of property transferable to or vested in such an assignee, unless brought within two years from the time when the cause of action accrued for or against such an assignee. Rev. St. U. S. § 5057. The time in which an assignee in bankruptcy can bring an action is here limited to two years from the time when the cause of action accrued for or against the assignee, and if this cause of action accrued more than two years before the action was brought, the defendant is entitled to judgment. That Drew had a cause of action to redeem the day the bonds were delivered, cannot be disputed; but is the cause of action then accrued the cause of action which is here sought to be enforced? That question is answered by the case of *Miner* v. *Beekman,* 50 N. Y. 343. That was an action brought by the mortgagee to redeem from a mortgage. The mortgage was made much more than 10 years prior to the commencement of the action, and the defendant pleaded the 10-years statute of limitations, and had judgment below. The court of appeals, in reversing the judgment, said: "The argument upon that point for the defendant is that the mortgagor, upon the moneys becoming due, had the right to come into a court of equity and have the amount of the lien determined and discharged of record upon payment. So far his position is correct. But is the deduction therefrom equally sound; that is, that this right is barred by the statute after the lapse of ten years? * * * It is an acknowledged branch of equity jurisdiction to remove clouds from the title at the suit of the owner of the fee. Such owner has a right to invoke this aid. But must he do so within ten years after the commencement of the cloud, or may he do it at any time during its existence while he continues such owner? My conclusion is that this is a continuing right, that it may be acted on at any time during the existence of the cloud,—never barred by the statute of limitations while the cloud continues to exist. This results from the continuing character of the right, which is equally as potent after the lapse of eleven years as it was during the first ten." Applying this principle to the question here, it is clear that the right to invoke the aid of a court of equity to ascertain the amount due upon an obligation secured by a pledge of personal property is a continuing right, and continues as long as the right to redeem exists. The same principle was applied in an action for the conversion of a pledge in *Roberts* v. *Berdell,* 15 Abb. Pr. (N. S.) 183. There the loan for the payment of which certain bonds were pledged had been paid more than six years before the commencement of the action, but the demand for the return of the bonds and the refusal of the pledgee to comply was within the six years. It was held by the court of appeals that the cause of action accrued on the conversion of the bonds, and there was no conversion until the time of the refusal; that a mere omission of the defendant (the pledgee) to return the bonds after the payment of the debt was not a conversion. The pledgeor, being the owner of the bonds, has therefore the right to redeem by the payment of

the amount due upon the obligation to secure which the bonds were pledged; and where the amount due is uncertain, he has a right to apply to the court to have that amount ascertained. That cause of action does not depend upon the right of the parties as they existed at the time of the pledge, but depends upon the right of the pledgeor to redeem at the time the bill was filed, and the cause of action upon which such bill is founded accrues not when the collateral security was first pledged, but when the right to redeem was first insisted upon, viz., upon the filing of the bill; and the plaintiff having succeeded to Drew's title to the bonds by the bankruptcy proceedings, and that title never having been divested, such right to redeem existed at the time of the filing of the bill.

I have examined the cases cited by the defendant in the supreme court of the United States, but none of them determine the question here presented. In all the cases in which the defense of the statute has been sustained, the right to commence the proceedings accrued more than two years before such proceedings were commenced, and in *Bailey* v. *Glover*, 21 Wall. 346, and the cases that have followed that decision, it was held that where fraud was charged, the cause of action did not accrue until the discovery of the fraud. Thus recognizing the distinction between the vesting of the right of action in the assignee and the accruing of the cause of action in his favor, and that although the action was not brought within two years after the appointment of the assignee, that did not bar the action, unless more than two years had elapsed after that cause of action accrued.

The defendant also relies upon the statute of limitations in this state, (sections 382, 388, Code;) but the plaintiff has under those sections 10 years in which to bring his action after the cause of action accrued, and it appears from what has been said that such cause of action accrued on filing the bill. The case of *Roberts* v. *Sykes*, 30 Barb. 173, must be considered as overruled by *Miner* v. *Beekman, supra.* Nor does the refusal of Chamberlain to recognize Drew's right to the bonds, or any portion of them, help the defendants. The application to Chamberlain was made by Boyd, but so far as appears without Drew's knowledge or procurement. Whatever interest he had in them passed to the plaintiff, and the transaction between Boyd and Chamberlain was not known to either Drew or the plaintiff. I have come to the conclusion, therefore, that the statute of limitations is no bar to this action, and that plaintiff is entitled to a decree for an accounting to ascertain the amount from Chamberlain to Drew. I think, however, on the evidence in this case that the defendant Chamberlain is entitled to hold these bonds as security for the Albany and Susquehanna bonds delivered by him to Drew, and sold by Drew, and also for the amount of $30,000 paid by Chamberlain to Drew's son at Drew's request. Boyd testified that at the interview at which Drew delivered the bonds to him on account of Chamberlain that Boyd insisted that he (Drew) should protect Chamberlain; that Boyd wanted it fixed so that there could be no question about the protection of Mr. Chamberlain, and his wife and children, and that for that purpose Drew consented that the bonds should be set aside for Chamberlain. It is clear that this gave to Chamberlain the right to hold the bonds until all obligations due from Drew to him had been paid, and the evidence in this case establishes that Drew was at the time indebted to Chamberlain, in addition to the note, the amount of $30,000, which Chamberlain paid to William H. Drew, at Daniel Drew's request, and on his agreement to make it right. The evidence also establishes that the eighty Albany and Susquehanna bonds were sold by Chamberlain to Drew, and by him sold and applied to his own purposes, and that that amount had never been repaid to Chamberlain. The decree should therefore provide that it be referred to a referee to ascertain and report how much is due to Chamberlain upon the note for $118,000, and the $30,000 paid by Chamberlain to Drew, and the proceeds of the Albany and Susquehanna bonds sold by Chamberlain

to Drew, and that upon the payment of the balance due that Chamberlain, or his assignees, transfer the bonds remaining unsold to plaintiff. Findings and judgment to be settled on notice.