## BROWN v. BRONSON et al.

(Supreme Court, Appellate Division, First Department. April 22, 1904.)

1. EVIDENCE—BOOK ENTRIES—CASHBOOKS.
   Entries made by a party in his own favor in his cashbook and ledger are not competent evidence against the party against whom they are made.

2. LIMITATIONS—BAILMENTS—CONVERSION BY BAILEE.
   The title to a thing pledged remains in the pledgor until divested by sale, judicial proceedings, or by an act of conversion on the part of the pledgee, in which latter case limitations run from the time of the actual conversion.

**3. NOTES—POSSESSION—PRESUMPTION—BURDEN OF PROOF.**

Possession, by the executors of a creditor, of a note, and stock pledged as collateral, imposed on the representatives of the debtor the burden of showing, in an action to recover the stock, that the note was a mere renewal of an original note, as security for which the stock was pledged, and that it had been paid, and also of explaining how it came to be in possession of the creditor's executors after the creditor's death.

**4. LIMITATIONS—PLEDGE OF COLLATERAL—DEMAND—ACCRUAL OF RIGHT.**

Where a note, stock to secure the payment of which was pledged, was paid, the right of the pledgor to make demand for the stock was complete, within Code Civ. Proc. § 410, providing that the time within which an action must be commenced to enforce a right, to the enforcement of which a previous demand is necessary, must be computed from the time when the right to make the demand is complete.

**5. SAME.**

Code Civ. Proc. § 410, subd. 2, providing that where there is a delivery of personal property, not to be returned, specifically or in kind, at a fixed time or on a fixed contingency, limitations run from demand, does not apply to the pledge as collateral of a certificate of stock to be specifically returned on payment of a note payable four months from its date.

Appeal from Special Term, New York County.

Action by Catherine J. Brown, individually and as executrix of Ira Brown, deceased, against Sara G. Bronson and others, as executrix of Frederick Bronson, deceased, impleaded with the New York Cab Company. From a judgment for plaintiff, defendants appeal: Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Flamen B. Candler, for appellants.
John A. Straley, for respondent.

O'BRIEN, J. The plaintiff, individually and as executrix of Ira Brown, deceased, brought this action to compel the defendants, executors of Frederick Bronson, deceased, to surrender a certain certificate of stock (No. 19) for 100 shares of the common stock of the New York Cab Company, Limited, issued to the firm of Ryerson & Brown, and indorsed by them in blank on February 13, 1884. The stock certificate in question was found by the executors of Bronson in his safe among his securities, and was in an envelope which contained a promissory note dated February 13, 1885, for $9,750, made by the firm of Ryerson & Brown, and payable to the order of Frederick Bronson four months after date. In addition to the certificate and note, there were copies of two receipts and other papers, to which reference will hereafter be made. There was no serious contention but that this certificate, No. 19, for 100 shares of stock, together with two other certificates, came into the possession of Bronson during his lifetime as collateral security for a note of $9,750 made by the firm of Ryerson & Brown, to whom Bronson had loaned that amount. The plaintiff had applied to the Supreme Court to compel the cab company to issue a certificate in place of this certificate No. 19, and upon such application the cab company was notified that the estate of Bronson had found the certificate and claimed an interest therein. Thereupon the plaintiff brought this action against the cab company and the executors of Bronson to deter-

mine their interests in certificate No. 19; and the theory sought to be
upheld by her proof is that it was originally given, with other securities,
to Bronson, as collateral to a note for $9,750 made by Ryerson &
Brown, which note had been paid, but, for some reason not explained
upon this record, remained in his possession until after his death,
when its existence and location were ascertained in the manner already
stated. In support of this theory that it was given as collateral se-
curity for a note that had been paid, one of the executors of Bronson
was examined, and testified to having found among the effects of Bron-
son an envelope containing certain papers—among them, the certificate
No. 19, two receipts of Bronson, a letter from Ryerson, a memoran-
dum of Ryerson & Brown, and receipt, and a note dated February
13, 1885—and that in Bronson's handwriting on the envelope con-
taining these papers was indorsed the following:

"Ryerson & Brown. Collateral for Loan $9750 at 6% Payable 13th June,
1884. Certifs Nos. 19, of 100 shares ea. New York Cab Co. Ld. Note dated
13 Feby. 1884. Frederick Bronson."

The two receipts are as follows:

"76 Wall Street, New York City.
                                        "13th February, 1884.
"Received from Messrs. Ryerson & Brown one hundred and ninety-nine
$88/100 dollars in full payment of interest at 6% on the loan of $9750 made
to them on the 10th October, 1883, and due on the 10th February, 1884.
"$199 88/100.                                    Frederick Bronson.
"Press copy made Feby. 12/84."

"Received from Messrs. Ryerson & Brown as collateral for the loan of Nine
thousand seven hundred and fifty dollars ($9750.) made on the 13th Febru-
ary, 1884, three certificates Nos. 19, 76, 77 for 100 shares each of the Common
Stock of the New York Cab Company Limited.                    F. B.
"Press copy made Feby 12/84."

These papers, together with the letter signed by Ryerson to Bronson
under date of February 9, 1884, and a memorandum agreement and re-
ceipt, justified but one inference, namely, that Bronson in October,
1883, had loaned to Ryerson & Brown $9,750, and obtained from them
the deposit of 300 shares of the stock of the cab company as collateral.
That this note was renewed, and that it was finally paid, are made rea-
sonably certain by the entries in the books of Bronson; and there would
therefore be no question as to the right of the plaintiff to the return
of the certificate, were it not for the fact that in the envelope with
the other papers was also found a note bearing the date February 13,
1885, which is for the same amount ($9,750), and for which the defend-
ants claim that the certificate in dispute must have been held as col-
lateral. There was a dispute of fact as to whether or not the date of
this note, February 13, 1885, was a mistake, the plaintiff insisting that
it should have been February 13, 1884; and it is this difference in the
date between the original note, the payment of which was sufficiently
proved, and this latter note, with the same amount, but of a different
date, upon which a controversy arose.

The evidence introduced which plaintiff claims tended to prove that
the note was a renewal note and was paid, and that there was a mistake
in the date, was the account in the journal of Frederick Bronson. In-
stead, however, of relying upon the evidence furnished from the books

of Bronson, deceased, the plaintiff, under the ruling of the trial judge, succeeded in introducing in evidence a statement of entries taken from the cashbook and ledger of Ryerson & Brown relating to transactions with Frederick Bronson, which had a direct tendency and considerable weight in support of the plaintiff's contention as to the error in the date of the note found in the envelope, and that the note for which the certificate in dispute had been given as collateral had been paid. The error committed in allowing these entries in evidence requires a reversal of the judgment. The extent to which books of account and entries from cashbooks may be allowed in evidence has been frequently discussed, and without going over the numerous cases, it is only necessary to refer to a late authority—Smith v. Rentz, 131 N. Y. 169, 30 N. E. 54, 15 L. R. A. 138—where, in the course of the opinion, the court says:

"The claim is also made that the books were competent as original evidence of the entries, under the rule making books of account in certain cases evidence in favor of the party keeping them. We think there is no foundation for this contention. The rule which prevails in this state (adopted, it is said, from the law of Holland), that the books of a tradesman, or other person engaged in business, containing items of account kept in the ordinary course of book accounts, are admissible in favor of the person keeping them against the party against whom the charges are made, after certain preliminary facts are shown, has no application to the case of books or entries relating to cash items or dealings between the parties. This qualification of the rule was recognized in the earliest decisions in this state, and has been maintained by the courts with general uniformity."

In addition, we have urged as a ground for reversal the statute of limitations, which was pleaded as a defense. The appellants' contention is that either the 6-year or the 10-year statute of limitations applies, and, as more than 10 years have elapsed since the delivery of the certificate to Bronson, if the statute commenced to run from the time of such delivery, or at any time so as to have the 10 years expire, then, unquestionably, the statute would be a bar. The question presented, therefore, is, when did the statute begin to run? There was no demand made for the return of the certificate to the plaintiff until the 27th of December, 1900, and the contention of the plaintiff is that the statute did not begin to run until after such demand was made for the return of the stock. The evidence would justify the inference that the stock was originally pledged as collateral to the note; and whether we conclude that, after the payment of the original loan, the certificate was retained by Bronson as a mere custodian, or as pledgee for some additional loan, the history of the certificate is such that it may well be deemed that Bronson never held the certificate under claim of ownership, or in any other way than as pledgee or custodian. We must regard the rule as now settled that, with respect to property pledged, the title remains in the pledgor until divested by some sale, or by the title being changed in some judicial proceeding, or by the pledgee converting the property to his own use by a sale thereof. Markham v. Jaudon, 41 N. Y. 235. In the latter instance the statute will begin to run from the time of the actual conversion. The precise question for our determination, however, is as to the rule to be applied in a case where the debtor delivers specific personal property as collateral security for a note which is due and payable more than 10 years before any demand is

made for the return of the property, or before an action is brought for its redemption or reassignment; the creditor in the meantime retaining it in his possession. The question is further complicated by the situation here presented, of a note of the debtors of a date different and subsequent to the original note, which original note, it is claimed, was paid, being in the possession of the creditor with the stock certificate, and having come into the possession of his executors upon his death. The fact that this note, together with the stock, was in the possession of the executors of the creditor, raised a presumption against the plaintiff, which it would be necessary to overcome by proof that such note was merely a renewal of the original note, and that it was paid, and by some explanation of how it came to be in the possession of the creditor's executors after his death. Apart from this complication, we think that the question which we are called upon to determine must be answered favorably to the contention of the appellants that the statute had run, and was a bar to this action. This conclusion is based principally, as it should be, upon the express language of sections 410 and 415 of the Code of Civil Procedure, prescribing the mode of computing periods of limitation.

Section 410 of the Code provides:

"Where a right exists but a demand is necessary to entitle a person to maintain an action, the time within which the action must be commenced, must be computed from the time when the right to make the demand is complete; except in one of the following cases: * * * (2) Where there was * * * a delivery of personal property, not to be returned, specifically or in kind, at a fixed time or upon a fixed contingency, the time must be computed from the demand."

If we should resolve, as did the trial judge, the question of fact favorably to the plaintiff, in holding that the note was paid, and that this, being a renewal of the original note, was the only one upon which Ryerson & Brown were indebted to Bronson, it is certain that the right to make the demand for the certificate was then complete, and, unless the plaintiff can bring himself within the language of one of the exceptions provided in section 410, the statute then commenced to run. The plaintiff insists, however, that the facts here make out a case falling under the exception provided for in the second subdivision of the section above quoted. In reading that section, it is apparent that what was intended to be protected was the deposit of money, such as the ordinary deposit in a bank, where no agreement is made for the return of the specific money deposited, or for its repayment at a fixed time, or cases where personal property is delivered, "not to be returned, specifically or in kind, at a fixed time or upon a fixed contingency." Here, however, the identical certificate was to be returned on the payment of the note, which was payable four months after its date; and therefore, upon the facts, the plaintiff has failed to make out a case bringing herself within one of the exceptions wherein the time from which the running of the statute of limitations is to be computed is to be reckoned from the demand. The precise question here involved has never, so far as our attention has been called to the decisions, been directly presented; but the argument to be drawn from those where questions very similar were involved, we think, will support the construction which we have placed upon this section of the Code. The earliest of these is

Roberts v. Sykes, 30 Barb. 173, where the pledgor of a note at six months, more than 10 years after the note became due, sought in equity the redemption and reassignment of stock pledged as collateral for the payment, and it was held that the statute was a bar to the plaintiff's right to maintain the action. See, also, Jones v. Merchants' Bank of Albany, 4 Rob. 221. In Bailey v. Drew (Sup.) 2 N. Y. Supp. 212, which was a well-stated case at the Special Term, it is said: "The case of Roberts v. Sykes, 30 Barb. 173, must be considered as overruled by Miner v. Beekman, 50 N. Y. 337." The latter case was where a purchaser under a void foreclosure sale was in possession, and the action was begun by the mortgagor for an accounting, and leave to pay the amount found due and enter into possession. It was held that the right to remove a cloud on title of real estate was a continuing right, against which the 10-year statute would not run. Nothing is said in the opinion disapproving of Roberts v. Sykes, and, for the reasons stated, we think that the two are clearly distinguishable.

There are other cases referred to by the respondent wherein the court has held that upon their facts they were brought within the exceptions of section 410 of the Code. Thus Roberts v. Berdell, 61 Barb. 37; Id., 52 N. Y. 644—where there was a promise to return the property on demand, and Bowman v. Hoffman (Com. Pl.) 20 N. Y. Supp. 415, where the obligation was payable on demand, were such cases; and similarly in Bailey v. Drew, supra, the note was payable on demand, and, while that feature distinguishes it from Roberts v. Sykes, supra, and analogous cases, they can by reason of such distinction be reconciled. The dictum in the Bailey Case, however, which would rather indicate that, whenever personal property is held under a pledge as security for notes, the right to maintain an action for redemption of such property is not affected by the statute of limitations, and such right of redemption continues until a demand is made, and as long as the title of the pledgor remains and has not been divested "either by sale or notice or by legal proceedings," is, we think, too broad, and is not supported by authority.

We do not think that much advantage is to be derived from a further discussion of cases, which we could not, if we would, entirely reconcile. In view of what we regard as the construction to be placed upon the language of section 410 of the Code of Civil Procedure, which is controlling, and, with respect to this case, would set the statute of limitations running not later than 1887, so that, whether we apply the 6 or the 10 year statute, it had run at the time the demand was made and the action was commenced. It follows that, the statute having been pleaded as a defense, it was a bar to the plaintiff's right to the relief sought.

Upon both the grounds stated, therefore, the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.