GERTRUDE GILLULY HUTSON, as Executrix, etc., of GEORGE K. GILLULY, Plaintiff, *v.* TITLE GUARANTEE AND TRUST COMPANY, as Executor, etc., of C. GODFREY PATTERSON and UNION TYPE-WRITER COMPANY, Defendants.

Supreme Court, Kings Special Term, June, 1922.

Foreclosure — lien upon certificate of stock — evidence sufficient to establish a loan with stock as collateral — Statute of Limitations no defense — Lien Law, § 206.

The rule that possession of personal property creates a presumption of ownership has no application to an unindorsed non-negotiable instrument, payable to or standing in the name of another; the mere fact of the possession of such an instrument is not even *prima facie* evidence of ownership.

The complaint in an action to foreclose a lien upon a certificate of stock and certain unpaid dividend checks alleged that both the certificate and the checks were held by G., plaintiff's testator, as collateral for a loan to P., defendant's testator, and were evidenced by two checks drawn in 1908 by plaintiff's testator to the order of defendant's testator, who died in January, 1910. Shortly after the death of plaintiff's testator in September, 1921, there was found in his safe a package of papers fastened together, containing the said certificate of stock and the two checks, and a sheet of paper indorsed in his handwriting as follows: " Security for money loaned to C. Godfrey Patterson, as per checks enclosed." There was no proof either direct or inferential that plaintiff's testator was ever indebted to defendant's testator, and all the circumstances proved negatived either a sale of the stock or a voluntary trust or gratuitous bailment thereof. In rendering judgment for plaintiff upon the ground that the evidence was sufficient to establish a loan with the deposit of the stock as collateral, *held*, that the certificate of stock being in the name of defendant's testator was evidence of original ownership in him, and such ownership once established was presumed to continue.

While the memorandum in the handwriting of plaintiff's testator, so far as it tended to establish a loan, was a self-serving declaration and, therefore, inadmissible, it was properly received as an admission against interest to limit and qualify the nature of the possession and ownership of plaintiff's testator, and its competency as evidence must be strictly limited to that purpose, but this limitation upon its competency was not fatal to plaintiff's success in the action.

The presumption that the checks were given in payment of debts due from plaintiff's testator to defendant's testator held to have been rebutted by the circumstances of the case.

The relation between plaintiff's testator and defendant's testator was that of pledgor and pledgee, and though the answer pleaded as separate defenses the six- and ten-year Statute of Limitations the present action was expressly authorized by section 206 of the Lien Law, without regard to any statute of limitation, though the plaintiff as executor could have proceeded to enforce the lien of his testator under the Lien Law.

ACTION to foreclose a lien on personalty.

*Latson & Tamblyn (Almet R. Latson, Jr.,* of counsel), for plaintiff.

*Edward M. Perry* and *Gifford, Hobbs & Beard (Lynn C. Norris* and *Alexander R. Kellogg,* of counsel), for defendants

KAPPER, J.    The action is brought to foreclose an alleged lien upon a certificate for seventeen shares of the capital stock of the Union Typewriter Company and certain unpaid dividend checks claimed to have been held by plaintiff's testator, George K. Gilluly, as collateral security for the sum of $1,510.88, loaned by him to defendant's testator, C. Godfrey Patterson.    The loan is claimed to be evidenced by two checks drawn by Gilluly to Patterson's order, each duly indorsed by the latter and stamped paid — one for $1,000, dated June 30, 1908, and the other for $510.88, dated September 8, 1908.    The essential allegations of the complaint are denied, and the defendant trust company, as executor, sets up as separate defenses the six- and ten-year Statute of Limitations, and counterclaims for the possession of the dividend checks and the certificate.    Patterson died in January, 1910, and the defendant trust company duly qualified as his executor.    Gilluly died in September, 1921.    Shortly after the latter's death, his executor found in his safe a package of papers fastened with a clip and containing the said certificate, the two checks, and a sheet of paper with the following indorsement thereon in Gilluly's handwriting: " Security for money loaned to C. Godfrey Patterson, as per checks enclosed."    Gilluly was proven to have been a successful and conservative business man.    Patterson was a borrower and frequently was in financial difficulties.    Gilluly never filed a claim with the defendant executor for the alleged indebtedness, and it is not shown that Patterson, or the defendant executor, ever demanded from Gilluly the said stock or the dividend checks. A letter from Patterson, dated October 8, 1909, requests a loan of $500.    This letter, addressed to Gilluly, concludes as follows: " If you will add this one more favor to the many you have conferred on me by asking Mr. Schenck or some other friend to loan me $500, you can place all the collateral you like, which is in the hands of Mr. Schenck, to cover the amount."    Practically, the

foregoing is a summary of all the evidence adduced. Plaintiff contends that the possession of the certificate by Gilluly creates the presumption of ownership; that the memorandum in his handwriting characterized his ownership of the certificate as a limited or qualified and not an absolute ownership, and so was admissible in evidence as an admission against interest; and that this evidence, together with other evidence referred to and claimed to be corroborating, sustains the cause of action alleged. It is true that the possession of personal property in the nature of chattels creates a presumption of ownership. *Matter of Kellogg,* 72 Misc. Rep. 303; *Halsey* v. *Hart,* 85 Hun, 46; *Wheeler* v. *Vanderveer,* 88 id. 233; *Hoyt* v. *Van Alstyne,* 15 Barb. 568. But this rule is not applicable to an unindorsed, non-negotiable instrument, payable to or standing in the name of another. The mere fact of the possession of such an instrument is not *prima facie* evidence of ownership. *Matter of Perry,* 129 App. Div. 587; *Cuyler* v. *Wallace,* 183 N. Y. 291, 298. Moreover the certificate was in the name of Patterson. This is evidence of original ownership in him, and ownership, once established, is presumed to continue. *Matter of Perry, supra; Cuyler* v. *Wallace, supra.* The memorandum in Gilluly's handwriting, in so far as it limited and qualified the nature of his possession and ownership properly, was received in evidence as an admission against interest. 2 Wigm. Ev. § 1458; *People* v. *Storrs,* 207 N. Y. 147, 160; *McClellan* v. *Grant,* 83 App. Div. 599; *Leary* v. *Corvin,* 63 id. 151. But its competency as evidence must be limited strictly to the purpose indicated. So far as the memorandum tends to establish a loan, it is a self-serving declaration and inadmissible. Thus in the section in Wigmore cited above, in referring to statements predicating a limited interest in property, the author says: " But they could not be received to prove the matter as to which they were not against interest,— for example, the ownership of the limited estate asserted." However, this limitation upon the competency of the memorandum is not fatal to plaintiff's success in the action. The possession of the stock by Gilluly is presumed in law to have been a lawful possession. 1 Jones Ev. § 74. But possession, either as the result of a sale or a deposit in trust or for safekeeping, would have been a lawful possession. Therefore, the nature of Gilluly's possession must be determined from the very meager evidence presented. There is no direct or circumstantial evidence of a sale. Gilluly was a careful business man. It is very improbable that he would have purchased the stock without securing a proper assignment or indorsement of the certificate. Neither is there any evidence of a voluntary trust or gratuitous bailment. Patterson's financial weakness is inconsistent with the supposition

that he delivered a valuable stock to Gilluly merely for safekeeping. All the circumstances disclosed negative the inference of a sale or of a voluntary trust or bailment. Eliminating these two theories, I think the evidence sufficient to establish a loan with the deposit of the stock as collateral. Patterson often was in need of financial assistance. Gilluly was financially in a position to extend aid to his friend. The relations between the two were intimate. The letter of October eighth discloses an abiding faith in Patterson, evidently the result of personal experience in the past, that Gilluly would negotiate the requested loan and thus " add this one more favor to the many you have conferred." There is no proof that Gilluly was ever indebted to Patterson, and nothing warrants such an inference. The presence of the certificate among Gilluly's effects, the memorandum in the latter's handwriting disclaiming absolute ownership thereof, the two checks carefully and designedly fastened to the certificate, and the failure of Patterson to demand the certificate, all strongly point to the conclusion that Gilluly was a lender, Patterson a borrower, and the stock collateral. The annexation of the checks to the certificate of itself suggests the inference of cause and effect. Logically, it induces the conclusion of a legal connection between the two, that the possession of the certificate somehow resulted from the issuance of the checks. I am aware of the presumption that a check is delivered in payment of a debt. *Nay* v. *Curley,* 113 N. Y. 575; *Marks* v. *Kellogg,* 170 App. Div. 464, 468; affd., 220 N. Y. 615. But, as said in *Nay* v. *Curley, supra,* " slight evidence is sufficient to render this presumption of law inapplicable * * *." Here the evidence rebuts the presumption. I think the circumstances in the present case rebut the presumption that the checks were given in payment of debt due from Gilluly to Patterson as effectively as did the circumstances in *Stimson* v. *Vroman,* 99 N. Y. 74, 81, 82. If the checks evidenced merely the payment of a pre-existing indebtedness, their careful annexation to the certificate was a purposeless and entirely inexplicable act. Upon all the evidence I conclude that plaintiff has established the cause of action alleged. As to the defenses of the Statute of Limitations, I do not think that either the six- or the ten-year statute is applicable. The relation between Patterson and Gilluly was that of pledgor and pledgee. No special statutory provision exists regulating a pledgor's action to redeem. Therefore, such an action must be brought within the period prescribed by law. *Brown* v. *Bronson,* 93 App. Div. 312. But the enforcement of a pledgee's lien is governed by a special statute. See Lien Law, §§ 200–210. While Gilluly's action on the debt was barred by the statute, his lien remained unimpaired. *Hulbert* v.

*Clark*, 128 N. Y. 295.    In the Lien Law there is no time limit upon a pledgee's right to sell.    He may do so at any time upon complying with the statutory requirements.    Section 206 provides that an action to foreclose a lien may be maintained " in any case where such lien exists *at the commencement of the action.*" When this action was commenced Gilluly's or his executor's lien existed unimpaired.    Instead of bringing this action the executor could have proceeded to sell under the statute.    But he was not compelled to adopt this remedy.    If the aid of a court of equity was necessary in determining the amount due, he is expressly authorized to institute this action by section 206, without regard to any Statute of Limitation.    See, also, *Bowman* v. *Hoffman*, 20 N. Y. Supp. 415.    Judgment for plaintiff.

Judgment accordingly.