LOUNSBURY *v.* PURDY.

Where a married woman paid the consideration for the conveyance of land which was, without her knowledge or consent, taken by her brother absolutely in his own name, without the expression of any trust: *Held*, that she was within the exception (1 *R. S.*, 728, § 53) by which a trust results for her benefit, although she had consented to a conveyance which would have been ineffectual as a trust and would have vested the whole estate in herself.

The brother, with another person, secured a part of the purchase money of the land by their note upon the understanding that it should be paid, as it was paid, from funds of the plaintiff subserviently received: *Held*, that the giving of the note, being for her benefit, was to be regarded as made at her request, and was equivalent to a payment by her.

A sheriff's certificate of the sale of the land under a judgment against the brother is a cloud upon the title of the equitable owner, which she may maintain an action to remove without waiting for the expiration of the period for redemption.

Where the complaint omits facts essential to a cause of action, but which might be supplied by amendment under § 173 of the Code, before or after judgment, and those facts are proved at the trial after the judge has refused to dismiss the complaint, the defect of statement is no ground for appeal to this court.

APPEAL from the Supreme Court. Action to remove a cloud upon title. The complaint stated that the sheriff of Westchester had sold the plaintiff's land to the defendant, Joshua Purdy, upon execution on judgments against one Clements Quereau, the brother of the plaintiff, and had delivered to Purdy his certificate of sale, under which Purdy claimed an interest in the premises in hostility to the plaintiff. The sale was stated to have been within a year previous to the time of commencing the action; the statutory period for redemption by the judgment debtor had therefore not expired. Certain defects in the complaint, upon which a motion to dismiss it was made and overruled at the trial, are sufficiently stated in the following opinion.

The trial was at the Westchester Circuit, before Mr. Justice EMOTT, without jury. The judge found the following

facts: In May, 1846, Clements Quereau purchased of David
Merritt, for $1000, the premises described in the complaint,
in trust and for the sole benefit of the plaintiff, who was a
married woman; but such trust was not created or declared
by any writing.   The purchase money was paid to Merritt
as follows: $100 in cash, the money of the plaintiff, on the
delivery of the deed; $423 by the note of Clements Que-
reau and the defendant Purdy, which it was understood and
intended by the parties should be paid, and which was
afterwards paid, by the proceeds of the share of the plaintiff
in the estates of her father and grandfather, who had died
nine or ten years before, but whose estates had not then been
settled; the residue of the purchase money was accounted
for by an amount due on a previous mortgage of the prem-
ises, which it was agreed should form part of the considera-
tion, and was assumed as such according to the deed from
Merritt to Quereau.   The plaintiff was not informed nor
did she consent to the execution of the deed of the premises,
which was made to Quereau in his own name, absolutely
and without expressing a trust for her.   She was not
present at the transaction, nor apprized of the particular
form in which the title would be taken, although she
understood and consented that the purchase was to be
by Quereau or Purdy, and a deed made to one of them in
some way for her benefit.   The plaintiff and her husband
went into the possession and use of the premises immediately
after this purchase, and continued to occupy them until the
time of the judgment and sale by execution, mentioned
in the pleadings.   The defendant knew of the object for
which the premises were purchased, and of the manner
in which the same were to be and were paid for, at the
time when these transactions took place, and had notice at
the sheriff's sale that the plaintiff claimed to be the actual
and equitable owner of the property.

The judge ordered judgment that the defendant release
to the plaintiff all right, title or claim to the premises de

scribed in the complaint, and that he be perpetually enjoined from claiming the same under the judgment against Quereau and the execution sale thereon. This judgment was, on appeal, affirmed at general term in the second district, and the defendant appealed to this court.

*Francis Larkin,* for the appellant.

*Owen T. Coffin,* for the respondent.

COMSTOCK, J. By our statute of "uses and trusts," contained in the revision of 1830, the trust which at the common law resulted in favor of the person paying the purchase money of lands, when the conveyance is taken in the name of another, has been abrogated. With obvious propriety, however, an exception is declared in the cases where an "absolute conveyance" is thus taken without the consent or knowledge of the person making the payment. (1 *R. S.*, 728, §§ 51, 53.) In the present case, according to the finding at the trial, the plaintiff consented that the deed of the lands in question should be taken in the name of her brother, Mr. Quereau, but she did not consent that such deed should be absolute. She intended that it should be given to him " in some way for her benefit." We are to take the facts as thus found, and the principal question is whether they make out a case falling within the exception.

As the conveyance to Quereau, according to the plaintiff's intention, was not to be absolute but in some way for her benefit, we must conclude that she had in view an express trust, to be declared either in the deed or in some collateral instrument to be cotemporaneously executed. If she can be supposed to have had an accurate knowledge of the law of trusts, the only express trust to which we can refer her intention, is one to receive the rents and profits of the land, and apply them to her use during her life, or for a shorter period. ( *Statute of Trusts,* § 55.) This is the only one of

the enumerated trusts applicable to her situation or possible to be created for her benefit. Such a trust would terminate with her life, if not sooner, and then the estate would revert to the grantor in the deed, or his heirs. (§ 62.) In the meantime the whole estate, with the right of possession, would be in the trustee, and the plaintiff would have no estate or interest at law or in equity. (§ 60.) It was possible, however, to give to the trustee unlimited powers of sale or disposition to be exercised on the direction or appointment of the plaintiff. Under such a conveyance, therefore, which would be highly special in its provisions, combining both trust and powers, the plaintiff might have become entitled to the rents and profits during her life, and might have secured the ultimate control and disposition of the estate. In this way, and so far as I can see, in this way only, could the legal title be vested in another person for her benefit. To suppose that the plaintiff had in mind a conveyance with such limitations, would be to impute to her a more precise learning in the law of trusts than she probably possessed. What her actual intentions were, however, was a mere question of fact to be determined at the trial; and if it were necessary to protect her rights against the absolute deed to Quereau, I think that, under the finding of the judge and his general conclusion in the plaintiff's favor, we should be bound to say that she intended such a conveyance as I have indicated.

But in order to educe an implied or resulting trust out of this transaction, it is not a necessary condition that the plaintiff should have intended a valid express trust, conforming in all respects to the statute. It is enough if the conveyance, absolute in form, was so taken without her knowledge or consent. She was doubtless ignorant of the law of trusts and especially of the fundamental changes made in that law by the Revised Statutes. She probably designed a conveyance to her brother, expressed, in general terms, to be for her benefit. This may be inferred from the

complaint, and this is the more obvious import of the finding at the trial. This, it is true, was an impossible trust, because the statute would immediately execute the use and vest the whole title in her. (§ 49.) But the impossibility of such an express trust does not alter the fact of her intention to create it, or exempt the estate from an implied trust in her favor. The true inquiry suggested by the statute is, did she intend an absolute deed to Quereau. This has been answered in the negative by the finding, and therefore a trust results from the payment of the purchase money, as it did at the common law. It is by no means necessary that her intentions should be guided by an accurate knowledge of the law in order to save her rights. If the conveyance was not in fact taken as she desired—if without her knowledge or consent it purported to vest an absolute title in Quereau—the conditions of the statute are satisfied and the case is brought within the exception to the general repeal of resulting trusts. She had in view, as I think we must assume, a trust conveyance which would have been ineffectual except to vest the whole title in herself. But the primary object of securing her own rights would have been attained although not in the precise manner she intended. It was, therefore, whether designed or not, a fraud upon her to take an absolute deed to another person; and upon well settled principles of equity, a trust resulted in her favor.

Upon the facts as they are stated, there is no difficulty in saying that the plaintiff paid the purchase money. She paid down $100, and for the residue, after deducting the amount of a mortgage which was to remain a charge upon the land, Quereau and the defendant gave their note with the expectation and upon an understanding that it was to be paid by her out of her share in her father's and grandfather's estates. The note was accordingly paid in that manner. If they had advanced the money upon such an understanding it would have been, in substance, a loan to her. Their obligation to

pay the money should be regarded in the, same light.   It was made for her benefit and impliedly at her request.

Through the resulting trust the plaintiff became, in equity, the owner of the premises in question, and her rights are, therefore, superior to those of judgment creditors of Quereau, the grantee in the deed.   Quereau was, however, the apparent owner at the time the judgments were recovered ; and the sheriff's certificate of sale consequently created a cloud upon the plaintiff's rights which she is entitled to have removed.   The objection that the suit was prematurely brought because the time had not elapsed during which the sale might be redeemed from, is not well taken.   The certificate itself, if there had been actually, as there was apparently, a right to sell this land, would be a specific lien or charge to the amount bid at the sale ; thus bringing the case clearly within the principles on which relief of this kind has usually been granted by courts of equity.

There remains one other question to be examined.   At the commencement of the trial the defendant moved to dismiss the suit on the ground that the complaint did not state facts sufficient to constitute a cause of action.   The motion was denied, and we are now asked to reverse the judgment on this ground.   The plaintiff's case is certainly not well stated in her complaint, because, while she concedes that she intended the deed of the land should be taken in the name of another person, there is no distinct allegation that it was taken in an absolute form without her consent or knowledge.   She also fails to state that the note for the principal part of the purchase money was given on her account or at her request, although it is averred that she afterwards paid it.   It may be that for want of these allegations the complaint fails to make out a case of resulting trust or to show a right to any relief.   But it does not follow that the judge at the trial was bound to dismiss the suit. We are referred to section 148 of the Code of Procedure, declaring that an omission to demur does not waive the

objection that the complaint does not state facts sufficient to constitute a cause of action. But the terms and spirit of that section are satisfied by holding that the right to object at the trial is not absolutely gone by failing to demur. Under the system of common law pleadings and practice, if the plaintiff proved the case stated in his declaration there was, in strictness, no right to move for a nonsuit, although no cause of action was stated or made out by the evidence. The appropriate remedy in such a case was to move in arrest of judgment, on the ground that no cause of action appeared on the record. But the Code, in the section mentioned, provides that the objection may be taken at the trial. If, however, the proof supplies the facts which the complaint omits to state, it is competent for the court to amend the pleading, and the objection will be overruled. All the provisions of the Code bearing upon the question must be construed together and be made to harmonize, if possible. According to one of those provisions, the defendant does not lose, absolutely, his right to object by omitting to demur and going to trial. But according to others, the most ample powers of amendment are given. At any time, before or after judgment, the court may amend the pleadings "by inserting other allegations material to the case," "or by conforming them to the facts proved," where the amendment does change substantially the claim or defence. (§ 173.) This was a case where the court, in its discretion, could exercise the power thus given. The facts proved, but not alleged in the complaint, were "material to the case." The proper amendment would conform the pleading to the facts, but would not, in substance, "change the nature of the claim." As the complaint could thus be amended at the trial, and as it can still be amended after the judgment, in furtherance of justice, the alleged defect in statement is no ground for an appeal to this court.

The judgment must be affirmed.

All the judges, except GRAY, J., concurred; he was of opinion that a complaint so defective as that in this case is not amendable, and dissented on that ground.

Judgment affirmed