## McCLELLAN v. GRANT et al.

(Supreme Court, Appellate Division, Fourth Department. May 5, 1903.)

1. CONVEYANCE TO PASTOR—TRUST—SUFFICIENCY OF EVIDENCE.
   Evidence in a suit by a son to impose a trust for his benefit on a conveyance by his mother to her pastor considered, and *held* to sustain a finding for plaintiff.

2. SAME—CONSTRUCTIVE FRAUD—PRESUMPTION.
   A conveyance by an aged and illiterate woman to her pastor, on whom she leaned for counsel and care, and who also induced the making of a will in his favor, will be presumed fraudulent.

3. SAME—PAROL TRUST—STATUTE OF FRAUDS—ABSENCE OF FINDING OF FRAUD.
   Though a trust in lands cannot, under the statute of frauds, be created by parol, yet, in a case of constructive fraud—as in a conveyance by an aged woman to her spiritual adviser—equity will disregard the statute, and permit a parol trust in behalf of the grantor's heir to be shown, though there is no distinct finding or charge of fraud.

4. SAME—EVIDENCE—DECLARATIONS OF DECEASED GRANTEE.
   The declarations of a deceased grantee, made while he held the title, and when his attention was directed to its character, are admissible against his heirs, to show that he was trustee of a parol trust.

Appeal from Special Term, Erie County.

Suit by Frank McClellan against Mary Grant and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

P. F. King, for appellants.
George H. Frost, for respondent.

SPRING, J. The plaintiff is a son of Mary Cane, who died in October, 1889. Her first husband, the father of the plaintiff, died many years ago, leaving the plaintiff his only offspring. The mother intermarried with Aaron Cane in 1854, who died in 1872, leaving a last will and testament, whereby he devised to his said wife the premises in question; and there was no issue of this marriage. The plaintiff and his stepfather did not get along amicably, and when a lad of 12 years the former left home, and for 3 or 4 years worked in the neighborhood, and for a time was in Illinois, but returned to West Seneca, Erie county, and enlisted in the Union army in 1862, serving three years, was honorably discharged, and returned to Illinois, where he has since resided, and reared a family. During his military service there were infrequent communications between the mother and the

¶ 4. See Evidence, vol. 20, Cent. Dig. §§ 878, 879.

son, which ceased altogether after he went West to live; and up to his mother's death no letter or communication was received by him from her, although apparently he wrote to her a few times. The mother was an illiterate woman, unable to read or write; but, according to the testimony, she retained a motherly affection for him, and the belief or hope that he still lived. The premises in question comprise a tract of land of about 3½ acres, situate in West Seneca, and were occupied by the said Mary Cane after the death of her husband; and she received the rents and paid the taxes thereon, and they were assessed to her even down to her decease. She was a devout member of the Catholic Church of West Seneca, of which the Reverend Thomas F. Hines was for a long time the pastor. The relations between the old lady and her spiritual adviser were close, and he was often at her home. In May, 1882, she executed and delivered to him a warranty deed of these premises; and in 1887, at Niagara Falls, she made him the sole beneficiary of her will, which was drawn at the instance and by the attorney of the said beneficiary, Father Hines. The grantee never took possession of the property described in the deed until after the death of Mrs. Cane, although he placed a mortgage upon it to the Buffalo Savings Bank in 1887 for the sum of $500. The said Mary Cane at the time of the giving of the deed was upwards of 70 years of age, and drew a pension from the United States government as her husband, Cane, had been a soldier in the Mexican War. In 1897 the plaintiff came to the G. A. R. Encampment at Buffalo, and learned of the death of his mother and of the conveyance to her pastor. He has commenced this action, charging that the deed was made by his mother and accepted by the grantee upon the understanding that, if the son ever was found, the land was to be his, and the priest held it for the benefit of the son pursuant to this promise. The proof on that subject consisted of declarations by the grantee, who died intestate in 1896, and the defendants are his heirs at law. The witness Fernal, who was seeking to purchase the place, testified that Father Hines told him the land could not be disposed of; that "he was holding it for Mrs. Cane's son, if he turned up"; and again: "There is nothing definite in this matter. If the boy turns up, the place is his." The witness White, who was on a similar mission in 1892, testified:

"I asked Father Hines if the property was for sale. I told him if it was I had a purchaser for him that wanted to buy it, and I wanted to know what the price was. He stood a few moments, and he says, 'I suppose you know that I am holding that property for a son, if he turns up.' Q. A what? A. A son; holding it for somebody. I says, 'Can't you give a clear deed of it to Mr. Gorman?' He said he would sell it, and hold the money for this boy if he ever turned up; he didn't think he ever would."

And again:

"He said * * * that he was holding that property for a boy, if he ever turned up. He says: 'I don't think he ever will. We never heard anything from him.' He said, 'I will sell it to you, and hold the money for the boy,' and then stated the price. He said he would sell it at that price."

And Mrs. Bund related the following conversation with Father Hines, which she said occurred in 1890:

"I asked him what the price was, and I believe he said $3,000—something in that neighborhood. I says: 'I understand there is a son living. Do you

know anything about that?' 'Yes,' he did. I said: 'Do you know whether that son is dead or alive?' He wasn't sure. He didn't know whether he was dead or alive, any more than any of the rest of us. I said: 'The son could claim the property if he came, couldn't he?' He said, 'Yes.' I said: 'Under those circumstances, I don't care to buy the property, but will let you know later.' He didn't know whether the son was dead or alive, but he was holding this property for the son in case he was alive."

The witness Harrington testified:

"I asked Father Hines if they had found the boy. He said, 'No.' I said, 'I don't think you will find him.' I says, 'Who will the property go to?' He says, 'It will go to the boy if he ever turns up.' I asked him if he found the boy. He told me the property would go to the son."

Proof was offered on behalf of the defendants tending to destroy the effect of this testimony. The court, however, has determined the question of fact in favor of the plaintiff, and I think the evidence sustains the conclusions reached.

The authorities are a unit in condemning the conveyance or transfer of property from a person to his attorney, guardian, or spiritual adviser, and presume a conveyance of that character was the result of an undue advantage exercised by the beneficiary. Marx v. McGlynn et al., 88 N. Y. 357, 370, 371; Barnard v. Gantz et al., 140 N. Y. 249, 257, 35 N. E. 430, and cases cited. Ten Eyck v. Whitbeck, 156 N. Y. 341, 353, 50 N. E. 963. The doctrine which is designated as "constructive fraud" is thus enlarged upon in Cowee v. Cornell et al., 75 N. Y. 91, 99, 31 Am. Rep. 428:

"We return, then, to the question whether this case was one of constructive fraud. It may be stated as universally true that fraud vitiates all contracts, but, as a general thing, it is not presumed, but must be proved by the party seeking to relieve himself from an obligation on that ground. Whenever, however, the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but that either, on the one side, from superior knowledge of the matter, derived from a fiduciary relation or from overmastering influence, or, on the other, from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary, and well understood. This doctrine is well settled."

In this case the grantor was an old woman, uneducated, and naturally leaned and depended upon her pastor. This is evidenced by several circumstances. She went to him when ill, leaving her home and going to Niagara Falls, where he then resided, and was in his home, and he provided a place for her. He caused her to make her will in his favor, so that he acquired all of her property. They did not stand on equal terms. He had a dominating influence over her, and the presumption is he induced the making of this deed. The complaint does not in specific terms charge fraud, and the court has not found that the deed was the result of fraud. The complaint, however, does set forth the facts to which I have adverted, and they are embodied in the findings of the court.

The argument is made that, as there is no distinct finding or charge of fraud, the judgment must be reversed; that this is an attempt to create a trust by parol, and is consequently within the condemnation

of the statute of frauds, and reliance is had upon Sturtevant v. Sturtevant, 20 N. Y. 39, 75 Am. Dec. 371; Wheeler v. Reynolds, 66 N. Y. 227, and kindred cases, which do hold the abstract principle that a parol trust cannot be created. Those cases, however, are not decisive of the one before us, which depends upon another principle well grounded in the doctrine of equity. Starting with the confidential relation existing between these parties, and the presumption following therefrom, the grantee became a trustee ex maleficio, and a court of equity will ingraft on the transaction a trust of that character. In Wood v. Rabe et al., 96 N. Y. 414, 48 Am. Rep. 640, the mother, in conjunction with her attorney and his former guardian, had induced her son to confess judgment to her for $2,000, whereby she obtained real estate belonging to him of the value of $10,000 upon her oral agreement to reconvey to him, but she refused to do this. The Court of Appeals disregarded the statute of frauds, and held the son could maintain an action to enforce the oral agreement. The court say at page 425, 96 N. Y., 48 Am. Rep. 640:

"There are two principles upon which a court of equity acts in exercising its remedial jurisdiction, which, taken together, in our opinion, entitle the plaintiff to maintain this action: One is that it will not permit the statute of frauds to be used as an instrument of fraud; and the other, that when a person, through the influence of a confidential relation, acquires title to property or obtains an advantage which he cannot conscientiously retain, the court, to prevent the abuse of confidence, will grant relief."

In Goldsmith et al. v. Goldsmith, 145 N. Y. 313, 39 N. E. 1067, the plaintiff, who was incapacitated by physical injuries to attend to her property, conveyed it to her son by absolute deed, upon his oral promise to hold it for the benefit of his brothers and sisters, which agreement he afterward repudiated. An action was commenced to compel him to convey to these brothers and sisters in accordance with his promise. The Court of Appeals again recognized the principle referred to, irrespective of the statute of frauds. The court, in a sentence, say at page 318, 145 N. Y., page 1068, 39 N. E.:

"It may be granted that no express trust was created, and that the judgment cannot be sustained on that ground, but we think the case is one in which equity will raise out of the situation, from the grouped and aggregated facts, an implied trust to prevent and redress a fraud, and which trust will be unaffected by the statute of frauds, and may properly be enforced."

The same doctrine is recognized in Amherst College v. Ritch, 151 N. Y. 282, 323, 45 N. E. 876, 37 L. R. A. 305; Ahrens v. Jones, 169 N. Y. 555, 62 N. E. 666, 88 Am. St. Rep. 620; and Winne v. Winne, 166 N. Y. 263, 59 N. E. 832, 82 Am. St. Rep. 647.

We are convinced this case comes within the doctrine of these cases. If the story of the plaintiff's witnesses is to be credited, there was no consideration for the conveyance, and the reason for the deed was the reliance the grantor placed upon the promise of her pastor to keep this property for her son if he should ever appear. The declarations of the intestate, made while he held the title, and when his attention was directed to the character of that title, are competent, as declarations against himself. Leary v. Covin, 63 App. Div. 151, 71 N. Y. Supp. 335.

The savings bank, to which the mortgage of $500 was given by Father Hines in 1887, is not a party to this action; and the validity of the mortgage is not attacked, and probably could not be successfully, for the grantor then had the record title.

The judgment is affirmed, with costs to the respondent. All concur.