## In the Matter of the Estate of JOHN H. McARDLE, Deceased.

Surrogate's Court, Westchester County, May 25, 1931.

*Strang & Taylor* [*Humphrey J. Lynch* of counsel; *Freda Rosenblum*, on the brief], for Mary S. McArdle and Charles M. Bingham, executors.

*Whitman, Ransom, Coulson & Goetz* [*Colley E. Williams, William G. Chambers* and *Charles T. Murphy*, of counsel], for Mary E. Roche.

SLATER, S. The account of proceedings herein shows an asset as follows: " Claimed interest in undivided one-half of real estate in Mamaroneck, being same premises conveyed to Mary E. Roche by Frederick Willets et al. by deed recorded April 6, 1916 in Register's Office, Westchester County, in Liber 2111 of Conveyances at page 100, excepting therefrom premises subsequently conveyed by Mary E. Roche to First National Bank and Trust Company of Mamaroneck."

Objections to the account were filed by Mary E. Roche and paragraph IV of the said objections states: " That said account contains items of real property to which said executors have no title " and, further, V. " That said account contains items of income from real property to which rents said executors have no right."

The executors of John H. McArdle claim a one-half interest in the said real estate and ask the court, through its equitable powers, to impress a trust upon the said property standing in the name of Mary E. Roche in favor of the estate.

Upon the hearing, Mary E. Roche claimed that the court is without jurisdiction. This challenge of jurisdiction compels the court to determine its right to the proceeding.

The question presented does not involve the legal title to the real estate. The court is to ascertain whether a trust should be impressed upon the real estate. Equitable relief is sought. The burden rests upon the executors of the estate to sustain their contention that a trust was created by the evidence presented. Possession is presumptive evidence of ownership but such presumption, however, is not conclusive if there be proof to the contrary. The issue of equitable interest must be tried as incidental to the accounting. (*Matter of Raymond* v. *Davis*, 248 N. Y. 67, 71; *Matter of Boyle*, 242 id. 342.) The court has jurisdiction of all the parties in interest. The fact that the question is an equitable one is not a ground of objection to the jurisdiction. The Surrogate's Court has jurisdiction to determine questions, either legal or equitable, arising in the course of proceedings in the execution of powers expressly conferred and which must be decided therein. (*Hyland* v. *Baxter*, 98 N. Y. 610.)

The procedure in the Surrogate's Court has been extensively changed, and the powers enlarged by the revision of 1914. It is now settled that the Surrogate's Court, under section 40 of the Surrogate's Court Act, as amended by chapter 439 of the Laws of 1921, has equity jurisdiction as would a court of equity. (*Matter of Cook*, 244 N. Y. 63, 71; *Matter of Fitzpatrick*, 252 id. 121.)

*Matter of Coombs* (185 App. Div. 312) and *Matter of Malcolmson* (188 id. 600), both prior to the amendment to section 40 made in

1921, held for the grant of general equity power, but in instances it was questioned, so the amendment of 1921 was enacted. In *Matter of Van Buren* v. *Estate of Decker* (204 App. Div. 138) the court recognized that, in chapter 439 of the Laws of 1921, the limitation or restraint on jurisdiction was removed.

Under the present Surrogate's Court Act the surrogate has power to try all questions, legal and equitable. (*Matter of Seaman*, 205 App. Div. 681.) It is clear that the provisions of section 40 of the Surrogate's Court Act conferred equitable jurisdiction upon the Surrogate's Court, so as to enable it to determine the question of equitable relief in an accounting proceeding. (*Matter of Hawes*, 119 Misc. 359; *Matter of Wiemann*, Id. 239; *Matter of Flint*, 120 id. 230; *Matter of Haigh*, 125 id. 365; *Matter of Frame*, 128 id. 788; *Schley* v. *Donlin*, 131 id. 208, 212; *Matter of Morris*, 134 id. 374; *Matter of Koehler*, Id. 532.)

In *Matter of Raymond* v. *Davis* (*supra*) it is held that the surrogate, in the exercise of his equitable powers, could direct the liquidation of partnership assets. Chief Judge CARDOZO restated the language of Judge THOMAS in *Matter of Coombs* (*supra*) when he wrote: " ' The State has empowered surrogates in unmistakable language, and it is not the function of the courts to discover or to fashion reasons for thwarting the manifest policy.' "

Since 1921 the authorities have vigorously sustained the grant of equity jurisdiction in an accounting proceeding. The doubt as to the equitable jurisdiction of the Surrogate's Court is ended by the enactment of chapter 439 of the Laws of 1921.

I hold that the court has jurisdiction to inquire into and decide the issue of equitable relief presented herein.

The testator was a man prominent in the civic life of Mamaroneck, and was upwards of sixty-five years when he died in 1928. He conducted a dry goods and department store there and elsewhere. For many years he was supervisor of the town of Mamaroneck. The property in question is situated in the business section, on the Boston post road, near the dry goods store of the testator. The testator, his wife and son resided with his sisters-in-law, the three Misses Lynch. There is pending in this accounting proceeding a contested claim made by the Misses Lynch for services rendered in the dry goods store, for the board of the testator, his wife and son at their home in Mamaroneck, and at the summer home in Connecticut, for over twenty-six years, and for the payment of the wedding gift to the son, consisting of a house. Mary E. Roche is a sister of the testator, and near his age. She has been a widow since 1914. She is a woman of property, received from her husband, and resides in her own home in New Rochelle.

The testator, by his will dated February 20, 1915, devised certain real estate in White Plains to this sister, Mary E. Roche, and another. He executed a codicil on June 7, 1921, and did not revoke the devise to Mrs. Roche.

The contention herein relates to real estate in Mamaroneck, contracted for on March 9, 1916, by Mary E. Roche from Frederick Willets and others for $20,000, $500 being paid at the time of the signing of the contract. The title was closed on April 6, 1916. The sum of $9,500 was paid at the time of the closing of the title, and a purchase-money mortgage executed for $10,000. The fire insurance policy was in Mrs. Roche's name. Mrs. Roche was not present at the closing of the title. On October 3, 1923, the mortgage was extended for three years. The extension agreement was signed by Mary E. Roche and duly acknowledged. At the time of the closing of the contract, a check was drawn by John H. McArdle for $500 to the order of Frederick Willets. On the face of the check was written "*a/c of Roche purchase.*"

On the closing of title a check was drawn to the order of Frederick Willets and another for $5,000 by John H. McArdle. On the face of the check were the words "*On acct. Roche purchase Willets property.*" Other checks were drawn by John H. McArdle to other parties to make up the difference in price. Every six months thereafter during the life of the mortgage John H. McArdle signed checks to the order of Frederick Willets for the payment of the interest. On December 15, 1926, John H. McArdle signed a check to the order of Frederick Willets in the sum of $10,000 for the payment of the mortgage. There is in evidence a check by Mary E. Roche to John H. McArdle, dated May 2, 1927, for $5,000.

It is significant that Mrs. Roche produced on the trial the deed and the satisfied bond and mortgage.

There is in evidence a lease of the property, dated the 1st of March, 1926, made between John H. McArdle and Mary E. Roche, parties of the first part, and William L. Leeney, party of the second part, which recites that "whereas the party of the first part are the owners of certain property which is of record in the name of Mary E. Roche."

William L. Leeney, the lessee, was a partner of John H. McArdle in the dry goods business in White Plains and elsewhere. The lease was prepared by Condit & Hite, attorneys for the Leeney dry goods interest in White Plains, and acknowledged before a notary public who was Mr. Leeney's secretary.

Witnesses testified that the testator collected rents, paid taxes and had repairs made to the building. There are also in evidence the income tax returns, both Federal and State, made by the

testator over a period of years, and likewise there is in evidence a copy of the income tax returns, both Federal and State, made by Mary E. Roche. Both parties reported a one-half ownership of the property here involved. One of the executors of the testator was called to testify with reference to the income tax returns. He testified that he made them from information furnished by John H. McArdle, and that the statement in the returns as to the one-half ownership was given to him each year by John H. McArdle; that at no time had he ever received such information from Mary E. Roche.

On the 12th day of July, 1927, Mary E. Roche entered into a contract to sell a portion of the property, with the First National Bank and Trust Company of Mamaroneck, for the sum of $3,400.20. She was described as the seller. Charles M. Baxter, Jr., attorney, was the witness to the signature of the bank, and John H. McArdle was the witness to the signature of Mary E. Roche.

The contract of sale was extended in August, 1927, by stipulation which is in evidence, signed in the handwriting of John H. McArdle as follows: " Mary E. Roche by John H. McArdle." There is a further extension signed by " John H. McArdle for Mary E. Roche, seller," and another and further extension is signed in the handwriting of John H. McArdle, " Mary E. Roche by John H. McArdle, seller."

The testator died March 25, 1928. The deed in performance of the contract is dated the 6th of April, 1928, signed by Mary E. Roche. The money, therefore, was paid to the same Mary E. Roche. There is no evidence that any part of this money was paid to the testator's executors, or demanded by them. The testimony shows that, after the testator's death, Mary E. Roche paid the tax bills to the village of Mamaroneck, assessed in the name of Mary E. Roche, in the sum of $4,167.93.

Mary E. Roche was offered as a witness by her counsel. Objection was made by the claimant as offending section 347 of the Civil Practice Act. The court reserved decision upon the objection, and will now decide the question in favor of the admission of the testimony of Mrs. Roche, because it comes within the exception when such testimony becomes competent.

Such testimony is competent when, as in this case, an executor is examined in his own behalf *concerning the transaction.* One of the executors, Charles M. Bingham, testified to the facts as stated in the income tax returns of the testator and of Mary E. Roche. He said that he wrote the returns, both in the testator's and Mrs. Roche's income tax report, from year to year, upon information received from John H. McArdle. Each of these reports shows

rentals from one-half interest in the real property affected by the instant question.

Under section 347 of the Civil Practice Act a party has the right to testify if the executor is examined in his own behalf *concerning the transaction*. What is the transaction in this case? It is the declaration of trust, if any, claimed to have been made by Mary E. Roche for John H. McArdle in half of the real property in question.

Presiding Justice LAZANSKY of the Second Department wrote, while at Trial Term in 1922, in *Minns* v. *Crossman* (118 Misc. 70), a very clarifying opinion upon the question of a transaction. He said: " although the testimony relates to independent facts, when it is disclosed by other evidence that the fact had its origin in and directly resulted from a personal transaction the prohibition of the statute is removed." In that case the cause of the illness following good health is disclosed by other proof in the case. " It may be said that the defendant did not testify to any transaction with the decedent. But in the light of the testimony of the other witness he was, in effect, testifying to the transaction." Judge LAZANSKY concluded that the testimony of the administrator removed the prohibition against the defendant's testimony to the transaction, and it was, therefore, an error to exclude his testimony. And so, in the instant case, the testimony of Bingham, the executor, went to the transaction of whether a trust was declared. This testimony does not fall within the ruling in *Farmers' Loan & Trust Co.* v. *Wagstaff* (194 App. Div. 757) and *Lockwood* v. *Lockwood* (201 id. 657). The inclusion of Mrs. Roche's testimony is supported by the rule in the leading case of *McLaughlin* v. *Webster* (141 N. Y. 76, 84, 85), which holds that, when an executor is examined in his own behalf with regard to the conversation, the door is opened. Mrs. Roche became a competent witness to testify in her own behalf in regard to the same transaction to deny or explain the testimony of the executor if she could. (*Martin* v. *Hillen*, 142 N. Y. 140; *Flick* v. *Penfield*, 82 App. Div. 610; *Motz* v. *Motz*, 85 id. 4; *Potts* v. *Mayer*, 86 N. Y. 302; *Adenaw* v. *Piffard*, 137 App. Div. 470.)

Also, Mary E. Roche was cross-examined with regard to facts in relation to the payment of the mortgage. An executor may waive the provision of law, or open the door by testifying himself as to such matters, or *cross-examine the witness* as to the transactions. The door was opened further by such cross-examination. (The New York Law of Proof of Transactions with Decedents, by John M. Greenfield, Jr., §§ 136, 225, 226, 237, 247.)

Section 294 of the Surrogate's Court Act, in referring to decrees

or orders, says: " But such a decree or order shall not be reversed for an error in admitting or rejecting evidence, unless it appears to the appellate court that the exceptant was necessarily prejudiced thereby." (*Wilson* v. *Kane*, 180 App. Div. 77, 79; *Matter of Adler* v. *Levene*, 191 id. 40; *Raub* v. *Babcock*, 195 id. 920; *Loder* v. *Whelpley*, 111 N. Y. 239, 246; *Matter of Kelly*, 238 id. 71, 83.)

The main question is: Should a trust be impressed upon the real property in behalf of the estate for a one-half interest therein? Did the testator supply one-half of the purchase price; or was an oral agreement entered into between the parties for a one-half interest; or is there proof of a declaration by Mrs. Roche by witnesses; or did a confidential relationship exist, the abuse of which would lead to an implication of a trust; or was there a paper writing declaring a trust? I think not.

The proof of the executors is that the testator supplied *all* of the purchase money while only a half interest is claimed. Why the claim and demand is not for a full interest in the property is not clear.

The records of the Larchmont Bank and Trust Company show that, on March 9, 1916, a withdrawal was charged to Mrs. Roche's account in the sum of $5,000. The records of the First National Bank and Trust Company of Mamaroneck show that, on March 8, 1916, the account of John H. McArdle was credited with the sum of $5,000. The records of the Mamaroneck Bank show Mrs. Roche's account charged with a withdrawal of $5,000 on April 5, 1916, and on the same date, in the same bank, John H. McArdle was credited with the sum of $5,000. The inference to be drawn is plain.

The $10,000 purchase-money mortgage was paid on December 15, 1926, by a check of John H. McArdle. The president of the National City Bank of New Rochelle testified that, on December 17, 1926, his bank loaned Mrs. Roche $10,000 on security pledged by her, and that said note is still unpaid. He also testified that a withdrawal from this account, in the sum of $5,000, was charged on February 9, 1927, and another withdrawal in the same sum on May 3, 1927. Mr. McArdle's bank showed a credit of $5,000 on February 8, 1927, and another credit of $5,000 on May 2, 1927. There was no evidence or claim that Mrs. Roche was indebted to Mr. McArdle on any other account.

Counsel for the executors claim that an equitable trust is established by the evidence, and refer to cases in support of their view. It is my opinion that the facts of the instant case are not sufficient to bring it within the ruling of the decisions declaring equitable trusts.

*Wood* v. *Rabe* (96 N. Y. 414) had to do with a *confidential relation* in the acquisition of the title to property and a promise was proven. *Goldsmith* v. *Goldsmith* (145 N. Y. 313) was another case of confidential relationship, and proof was made of an *oral agreement* and promise.

In *McKinley* v. *Hessen* (202 N. Y. 24) the property was purchased and title taken in the name of the sister of the plaintiff under an *oral agreement* to the effect that the plaintiff would pay the consideration therefor, and take title thereto in the name of the defendant. In *Sinclair* v. *Purdy* (235 N. Y. 245) there were *repeated declarations* by the sister in favor of the brother's ownership, although title was in her name. The court found that there was an abuse of a confidential relationship which existed and equity granted relief. *McKenna* v. *Meehan* (248 N. Y. 206) was a case of abuse of *confidential relationship without a writing* leading to an implication of a trust. In *Shubert* v. *Keit* (134 Misc. 330) the court found a *confidential relationship* growing out of a partnership, and that the defendant gravely violated the fiduciary relationship. In *Kushlowitz* v. *Blum* (134 Misc. 607) it appears that the plaintiff quitclaimed to his wife for the purpose of enabling her, in his absence, to convey the property in the event of a sale, and caused a second parcel to be purchased and the title to run to his wife. In the absence of evidence showing any agreement that the wife was to hold it for any specific purpose, or that she should take any other than an absolute title, the court said a finding was warranted that, upon her death, intestate, *that parcel* went to the defendant, the wife's father as her only heir at law. In *Foreman* v. *Foreman* (251 N. Y. 237, 240) the court held that the rule is now settled that the statute does not obstruct recognition of a constructive trust affecting an interest in land, where a *confidential relation* would be abused if there were repudiation without redress of the trust orally declared. At page 242 the court said: " His equity does not grow out of payment and nothing more. It is reinforced by *words of promise*, by the relation of man and wife, and by unequivocal acts of confirmation and performance." In *Percy* v. *Huyck* (252 N. Y. 168) there was evidence of a *paper writing* declaring the interest of another. In *Matter of Brown* (252 N. Y. 366) the facts disclosed that the decedent had *written certain trust declarations* of which the beneficiary was ignorant. At page 375 the court said: " There must be proof of a *declaration of trust* in writing to pass real property (Real Prop. Law, § 242; Cons. Laws, ch. 50), but the declaration varies with the circumstances of each case; it may be contained in a letter (*Percy* v. *Huyck*, 252 N. Y. 168; *McKenna* v. *Meehan*, 248 N. Y. 206), or as here by

*formal witnessed statement."* In *Bartos* v. *Bartos* (138 Misc. 117) there was testimony that the wife said she *would hold* the property until he asked for it back, and *such an agreement* was definitely established by witnesses. The court found that the plaintiff's wife made an agreement to reconvey. In *Carrier* v. *Richardson* (139 Misc. 171) the evidence was too inconclusive to warrant the court in lending its aid to compel the defendant to give up to the plaintiff. In *Gambold* v. *MacLean* (255 N. Y. 202) the court said: " To sustain the judgment which has been given in favor of the plaintiff, it must appear that such a trust was declared in writing. In the absence of any agreement or inducement amounting to a promise, express or implied, intention is insufficient unless carried out. (*Percy* v. *Huyck*, 252 N. Y. 168.) This is not a case of unjust enrichment under cover of the relation of confidence. (*Sinclair* v. *Purdy*, 235 N. Y. 245.) " In that case *letters* had been written, and it was claimed that they amounted to a declaration of trust. In deciding, the court said that the evidence " falls far short of proving any binding agreement made at the time of the transfer to create a trust, or of proving the declaration of a trust." At page 210 the court said: " Charles for ten years never thought of a trust nor stated that his deed was given upon any such promise or consideration."

In that case, too, was raised the question whether the plaintiff was not estopped by the conduct of his testator from claiming the trust. The court said: " Some of this evidence was incompetent, but we need not pass upon the objections and exceptions taken to it, as we hold even under the very liberal ruling made by the able trial judge, that the plaintiff has failed to make out a case. In equity upon an examination of remote events for the discovery of any unfairness, over-reaching or betrayal of trust, much liberality is often permitted in the introduction of evidence. However, with all the evidence in the case — relevant and irrelevant — we cannot find that declaration of trust  *  *  *  sufficient to sustain the judgment."

Neither do the facts of the instant case come within the ruling of *Isquith* v. *Isquith* (229 App. Div. 555) nor *Van Dyne* v. *Nelson* (230 id. 577).

The executors, however, point to the income tax returns, the lease and the checks received for rent, and the testator's acts of control, to sustain their contention. The income tax returns and the lease appear to have been *prepared* for Mrs. Roche's signature, and for the event. The acts of control of the property, such as paying part of the taxes, assessed in the name of Mrs. Roche, collecting rents and looking after the property generally, were no

more than an agent acting for another would have done. They do not illumine the path to the goal.

The testator, since 1916, the date of the acquisition of the property, assumed to own it all, by his acts of control. He only took two persons into his confidence — Bingham, who prepared the income tax reports; to him he said that he owned half and "my sister owns half;" and then to the attorney who prepared the lease that recites "my sister and myself own the property." These were all self-serving declarations. He sent by a messenger, or took, these papers to the sister with the request to sign them, which she did without reading them. Such proof does not appeal strongly to a court of equity. There is nothing open and above-board about it. This falls "far short" of proving a trust declared by Mary E. Roche.

At the time of the contract of sale of a portion of the real property by Mary E. Roche with the Mamaroneck Bank, John H. McArdle was a director and vice-president of the bank. His executors now claim that, at the very hour he annexed his name as a witness to the contract, and to the stipulations extending the terms of the contract, he was equitably entitled to a one-half interest in the property sold. But he stood mute and permitted his bank to join in a contract of sale with his sister without disclosing what is now claimed by his executors.

I am not inclined to believe that he deliberately made himself a party to a fraud upon the bank. The bank's title would be defective. He loaned his name as a witness to give life to the contract of sale. He described his sister as the "seller." Such procedure on his part negatives the claim of his executors in their effort to assert something that their testator concealed and never openly asserted. The claim of the executors must fail by the act of their testator. His name on the contract and the stipulations measures the strength of the claim.

Estoppel by silence arises where a person, by force of circumstances, is under duty to another to speak and refrains from doing so. Where a person stands by and sees another about to commit an act infringing upon his rights, and fails to assert his title, he will be estopped afterward to assert it. (21 C. J. 1061, 1150, 1152.) The doctrine of estoppel by silence could be invoked in favor of the bank. There may not be an equitable estoppel in favor of Mrs. Roche, but the inference to be drawn from the then "stillness" destroys the claim of a constructive trust. In reality, it never existed.

I fail to find in the testimony adduced by the claimant evidence to support an oral declaration by Mary E. Roche. Neither was

there submitted any writing which could become a written declaration of trust. Neither may an inference be drawn, from all the facts, which would give rise to a declaration of trust by implication. A confidential relationship did not exist. I find, on the law and the facts, that the executors of John H. McArdle are not entitled to equitable relief as demanded.

Submit decision in accordance with this opinion.