In the Matter of the Estate of ANNIE E. POTH, Deceased.

Surrogate's Court, Bronx County, April 9, 1935.

*Raphael Brandes,* for the petitioner.

*Lester M. Friedman,* for the respondent.

HENDERSON, S.   This is a discovery proceeding brought by the temporary administratrix.   During the pendency of this proceeding, the decedent's will was admitted to probate and letters testamentary were issued to the administratrix.   The executrix has been substituted for the administratrix.   The respondent Harry Mabel produced certain papers requested by the petitioner which were impounded by the court.   As to him, this proceeding is dismissed on the merits.

The other respondent is the surviving husband of the decedent. Her earning capacity was substantial.   Her husband handled her investments for her, a large portion of which was in mortgages. Questions have arisen between the estate and this respondent with respect to three parcels of real property.

The first parcel is known as No. 230 West One Hundred and Forty-second street, in New York county.   The estate seeks the possession of a bond, a mortgage, an assignment thereof and other

papers and records affecting this parcel. The respondent contends that he owns the bond and mortgage and that the papers and records belong to him. The bond and mortgage on this property were executed by Marie Johnson to the respondent Benjamin F. Poth. They are dated December 16, 1925, and the mortgage was recorded. Benjamin F. Poth assigned the bond and mortgage to Annie E. Poth under date of February 21, 1927. This assignment was also recorded. The respondent alleges that at the time the bond and mortgage were assigned, no consideration passed and he took a reassignment from her. He alleges that such reassignment was kept by him in a safe in his wife's office to which several persons had access, and he is unable to find it. I am satisfied from the credible evidence that such reassignment was made and that the transaction was substantially as claimed by the respondent. The bond and mortgage are his and the executrix will be directed to assign them to him.

The second parcel is known as No. 234 West One Hundred and Forty-second street, in New York county, and was owned by the decedent. The estate seeks the recovery of rent collected therefrom by the respondent who contends that he spent part of such rent for the decedent. The respondent managed this property for the decedent. I find that the collections and disbursements as claimed by him under those specific headings are correct. The collections were $1,556.01 and the disbursements amounted to $547.26, leaving a balance of $1,008.75. He also claims certain foreclosure disbursements made for the decedent, as follows: Ralph O. L. Fay, $25; Joseph P. Day, Inc., $55, and James A. Devine, $164.84. These items, aggregating $244.84, are correct, and may be deducted from the above balance due the estate. No allowance will be made for the other items for which credit is claimed and no determination has been made with respect to them. Such claims may be asserted upon the accounting. The respondent will be directed to pay the difference, $763.91, to the executrix.

The third parcel is located at One Hundred and Forty-sixth street and Gerard avenue, in Bronx county, and is known as Gehn's Garage, Inc. The estate seeks a direction that the respondent turn over to the estate the sum of $500 which he collected as rent from the lessee, and other relief. The respondent refuses to pay any part of that sum and alleges that he " is the owner of said garage premises referred to, pursuant to arrangement with Annie E. Poth, the decedent." The record title is in the respondent's name, but the estate asserts that the equitable title was in the decedent and is now in her estate.

The respondent contends that this court may not determine the matter because the title to real property is involved and the court's jurisdiction in discovery proceedings is limited and confined to money and other personal property.

The present controversy is novel. There has not been brought to my attention any decision upon an exactly similar question of jurisdiction. The nearest in point that I have been able to find is a recent decision of Mr. Surrogate FOLEY in a discovery proceeding brought to recover rents, the right to which depended upon the ownership of the realty. That distinguished jurist held that a Surrogate's Court has jurisdiction in a discovery proceeding to determine a controversy over rents involving the question as to whether a deed to realty was absolute or whether it was given merely as collateral security, and to determine that question. The proceeding was brought against a former executor of the, estate and a former owner of the realty involved. The surrogate found that the conveyance was not absolute but was made as temporary security for the liability of the former executor and for the purpose of protecting the rights of legatees, and that the rents were not to be collected by the grantees or retained by the grantor for the benefit of the estate. The surrogate held that the petitioners were not entitled to the rents and dismissed the discovery proceeding on the merits. (*Matter of Breslin*, N. Y. L. J. Mch. 20, 1935, p. 1423.)

The recent enactments abolishing curtesy and dower, not then vested or inchoate, and the recent amendments to the law affecting the descent and distribution of the estates of decedents, evidence the continued legislative intent to remove the time-worn, but now unnecessary, distinction between interests in realty and interests in personalty which arose when all wealth was practically confined to ownership of lands and the former were deemed more important and given greater protection than the latter. (Original Report of Revision Commission to the Legislature of 1928, Leg. Doc. [1930], No. 69, p. 81.) Despite such modern trend the law remains that a discovery proceeding will not lie where the *sole* purpose thereof is the recovery of realty. (*Matter of Cofer*, 121 Misc. 292.) In that case, so far as is now pertinent, the estate sought discovery of " real estate conveyed by the decedent to the respondent a few months prior to his death." It does not appear that the estate sought the recovery of any rent or of any other personalty connected with the realty.

If this respondent had collected the rent merely as the decedent's agent, which he concededly was, with respect to " her property and affairs at all times," or without authority after his agency had been terminated by her death, there could be no question

of my jurisdiction to determine the matter and adjust the account as I have hereinbefore with respect to the second parcel. If I am ousted from jurisdiction merely because title to real estate is involved by a defense of alleged non-ownership in the estate, it follows that any agent or any unauthorized person, against whom a discovery proceeding is brought for rents which he has collected, may, by asserting title in a stranger, force the estate to seek relief in some other forum and interfere with and delay the administration of the estate. The anomaly of that situation is apparent upon consideration of recent legislation (Laws of 1934, chap. 352) which demonstrates the continued legislative purpose to centralize and unify in the Surrogates' Courts jurisdiction as to decedents' estates and all matters relating to the affairs of decedents. Under the provisions of the statutes added by that legislation, the estate's action at law for conversion or for money had and received or even for a debt, may be transferred to the Surrogate's Court, in one of the counties specified in such statutes, which has jurisdiction of the estate. (Surr. Ct. Act, § 40, subd. 9, and § 41, subd. 3, par. d; Civ. Prac. Act, § 190-a; *Matter of Burza*, 155 Misc. 44.) Thus, through circumlocution, delay and expense, the issue is brought back to the Surrogate's Court which then becomes clothed with the presently disputed jurisdiction. That legislation is certainly not consistent with the intent, now imputed to the Legislature, to bar the Surrogate's Court from determining an incidental issue arising in a discovery proceeding merely because it involves ownership of realty.

It has been held that a Surrogate's Court has complete jurisdiction in accounting proceedings to determine the ownership of realty and to impress trusts thereon.. (*Matter of Bush*, 243 App. Div. 322, 324; *Matter of McArdle*, 140 Misc. 257; *Matter of Engel*, Id. 276, 284; *Matter of Van Muffling*, 154 id. 300, 303; *Matter of Kaplan*, N. Y. L. J. July 10, 1931, p. 1860. See, also, *Fleckenstein* v. *Osler*, 228 App. Div. 872.) " The essential point is whether the transactions concerning the property * * * constitute ' matters relating to the affairs of a decedent.' If they do, the provisions of section 40 of the Surrogate's Court Act, as amended by Laws of 1921, chapter 439, and Laws of 1924, chapter 100, confer the broadest jurisdiction upon the Surrogate." (*Matter of Lyon*, 266 N. Y. 219, 223, 225.)

Not only have I jurisdiction to determine whether the said sum of $500 belongs to the estate or to the respondent, but by command of the statute (Surr. Ct. Act, § 206), I must hear and determine the issue raised in this proceeding as to the title to the collected rents involved in the inquiry and must make a decree accordingly. It is obvious that compliance with this statutory

mandate is impossible without first determining the ownership of the realty which produced the rents. It follows that the statute must be construed to authorize the exercise of every jurisdiction necessary for such compliance. (*Matter of United States Trust Co.*, 175 N. Y. 304, 308; *Matter of Malcomson*, 188 App. Div. 600, 605; *Matter of Brady*, 111 Misc. 492, 497.) That such is the intendment of the statute is further evidenced by the additional legislative grant of complete jurisdiction in any proceeding relating to the affairs of a decedent which is properly brought in the Surrogate's Court having jurisdiction of the decedent's estate. (Surr. Ct. Act, § 40.) Under the provisions of the latter statute, this court " has, in addition to the powers conferred upon it, or upon the surrogate, by special provision of law, jurisdiction, as follows: To administer justice in all matters relating to the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, or between any party and any other person having any claim or interest therein who voluntarily appears in such proceeding, or is brought in by supplemental citation, as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires. In addition to and without limitation or restriction on the foregoing powers, each surrogate or surrogate's court shall have power,. in the cases and in the manner prescribed by statute: * * * 4. * * * To enforce against a respondent the delivery of personal property, or the payment of the proceeds or value of personal property belonging to or withheld from an estate. 5. To direct the disposition of real property, and interests in real property of dedecents, and the disposition of the proceeds thereof."

The exercise of this broad and comprehensive jurisdiction is restricted only by the provisions that an issue relating to a decedent's affairs must first be raised between two or more parties to a proceeding of which a Surrogate's Court has cognizance and in which a process has been returned to the court. In the present proceeding brought under statutory authority (Surr. Ct. Act, § 205), an order to show cause, the process prescribed by such statute, has been duly returned to this court which has jurisdiction of this decedent's estate. The below-noted circumstances concerning the third parcel demonstrate that the matter relates to the affairs of this decedent. The questions at issue arose between two of the three parties to this proceeding. No one is interested in the matter, except the estate and this respondent.

A question of ownership of real property is involved, but it is incidental to the determination of the ownership of the money

and it must be answered before such determination can be made. Therefore, I have complete jurisdiction, in law and in equity, to try and to determine such question. (Surr. Ct. Act, §§ 40, 205 and 206; *Matter of Cook*, 244 N. Y. 63, 71; *Matter of Raymond* v. *Davis*, 248 id. 67, 71; *Matter of Lyon, supra; Matter of Van Buren* v. *Estate of Decker*, 204 App. Div. 138, 140; *Matter of Seaman*, 205 id. 681, 686; *Matter of Michelbacher*, 226 id. 858, revg. on referee's report, 137 Misc. 89, 95; affd., 253 N. Y. 515; *Matter of Bush, supra; Matter of McArdle, supra; Matter of Engel, supra; Matter of Lakner*, 143 Misc. 117; *Matter of Van Muffling, supra; Matter of Breslin, supra*.)

The decedent owned a bond and second mortgage for $15,000 upon this realty. This investment was also handled by the respondent for the decedent as her agent. After default by the mortgagor, the decedent became entitled to sue upon the bond or to foreclose the mortgage. Foreclosure was commenced and a receiver was appointed. In that action the decedent could obtain the premises and a judgment for any lawful deficiency or a liquidation of her then unproductive investment. In the course of subsequent negotiations conducted by the treasurer and owner of the corporation which then owned the premises, his brother-in-law, the respondent and one of the attorneys for the decedent plaintiff, the matter was settled and it was agreed that the owner would convey the property to the decedent, that the foreclosure would be discontinued, that the mortgagor would be released from liability on the bond and that the decedent would give the owner of the corporate grantor a lease so that he could continue his garage business. The decedent did not participate in such negotiations, but the participants understood that the respondent was negotiating with them on her behalf and as her agent. At the closing of title, however, the deed was taken, in the decedent's absence, in the name of the respondent upon the suggestion of the attorney that the mortgage should remain as a record lien so that the property could be sold subsequent thereto if such a sale became desirable, and that the deed should be taken in the name of some one other than the decedent so that no question would arise as to the possible merger of the decedent's mortgage into her fee. The respondent told the attorney to take the deed in the respondent's name.

The respondent was the decedent's husband and had looked after the mortgage for her as her agent. It was not unnatural to use his name for the purpose. There is no intimation that there was anything improper or unusual in such suggestion or the ensuing conveyance. Both the decedent and her husband were solvent. The attorney testified that he had never met the dece-

dent, that the only person he knew in the matter was the respondent, and that the respondent was the decedent's husband and handled her affairs, including the arrangements for the foreclosure action. The decedent was not present at the closing and title was closed without any communication to or from her. The evidence demonstrates that she could not have known of the suggested change in the deed nor have consented thereto, although she may have known of the contemplated conveyance to her in settlement of the matter concerning which there is no testimony. The foreclosure action was discontinued, the respondent gave the lease which the decedent was to have given and the obligor was released from liability on the bond. No consideration for such conveyance moved from the respondent or from any one other than the decedent.

Thereafter and until the decedent's death, more than fifteen months later, the respondent continued in charge of this investment and collected the rents which, including checks drawn to his order and indorsed by him, he turned over to the decedent or caused them to be deposited in her separate bank account. All expenditures for taxes, first mortgage interest, insurance premiums and other carrying charges in connection with the property were made by the decedent directly or were allowed or refunded by her to her husband who, from time to time, rendered accounts to her of his management of her investments. The rights and the liabilities and the dominion that go with ownership were continuously hers and were continuously so recognized by the respondent during her lifetime. There can be no doubt that these transactions relate to the affairs of this decedent.

Since her death, however, the respondent has collected the sum of $500 as such rent for two months which he refuses to turn over to her estate. Half of this sum had accrued prior to the decedent's death. The respondent now alleges that he is the owner of these premises " pursuant to arrangement with Annie E. Poth, the decedent." He did not plead the Statute of Frauds. The respondent treated this property as his wife's at all times during her lifetime and only asserted that it belongs to him after her death. It is apparent, and the testimony of the corporate grantor's treasurer and of the attorney who closed the title is, that the respondent merely lent his name so that record title of the fee would be separate from the record title of the mortgage which was not satisfied of record for obvious, though perhaps unnecessary, reasons.

Upon the evidence I find that the entire consideration for the conveyance of the third parcel moved from the decedent, and that the respondent, her husband and agent, purchased such realty with property belonging to his wife and took the same as an

absolute conveyance in his own name without the consent or knowledge of the decedent who paid all the consideration therefor. There is no evidence of the " arrangement " alleged by the respondent, and under which he now asserts ownership of the fee in an unconscientious endeavor to retain such unjust enrichment to which he is not entitled.

I also find that the action of the respondent in taking the deed in his own name without any limitation expressed therein and his present repudiation of the transaction whereby he obtained the deed are each in violation of the trust reposed in him by the decedent and imposed upon him prior to such transaction by reason of his agency in her affairs and by the confidential relationship arising from their status as husband and wife.

It follows, and I hold, that a trust resulted from such transaction in favor of the decedent as to the entire fee of such realty by implication or operation of law (Real Prop. Law, § 94, subds. 1 and 2) and that such resulting trust is expressly excepted from the operation of the Statute of Frauds (Real Prop. Law, § 242). Authoritative decisions, as well as the unambiguous text of these statutes, support such conclusion. (*Lounsbury* v. *Purdy*, 18 N. Y. 515, 518; *Brown* v. *Cherry*, 57 id. 645; *Wood* v. *Rabe*, 96 id. 414, 421, 424; *Haack* v. *Weicken*, 118 id. 67, 72, 74; *Leary* v. *Corvin*, 181 id. 222, 227; *Church of St. Stanislaus* v. *Algemeine Verein*, 31 App. Div. 133, 135; affd., 164 N. Y. 606; *Hosford* v. *Merwin*, 5 Barb. 51, 57; *Safford* v. *Hynds*, 39 id. 625, 628; *Stevens* v. *Union Trust Company*, 57 Hun, 498, 504; *Schierloh* v. *Schierloh*, 72 id. 150, 154; affd., 148 N. Y. 103, 106.)

Even if the decedent had consented to the transaction under some oral agreement or declaration of trust, the circumstances attending the whole matter are sufficient to constitute a constructive trust which a court of equity will recognize and enforce despite the provisions of the Statute of Frauds (Real Prop. Law, § 242) or of its extension (Real Prop. Law, § 259) or of the statute which abolished, with specified exceptions, the resulting trusts recognized and enforced at common law (Real Prop. Law, § 94). Equity will not permit a statute to be used as an instrument for either the perpetration or the perpetuation of a fraud, but will grant relief whenever a person, through the influence of a confidential relationship, acquires title to property which he cannot conscientiously retain adversely to the interest of the person who placed confidence and trust in him, or whenever the abuse of a confidential relation leads, without any writing, to the implication of a trust. (*Wheeler* v. *Reynolds*, 66 N. Y. 227, 237; *Wood* v. *Rabe, supra; Goldsmith* v. *Goldsmith*, 145 N. Y. 313, 318; *Sinclair*

v. *Purdy*, 235 id. 245, 252; *Mc Kenna* v. *Meehan*, 248 id. 206, 214; *Foreman* v. *Foreman*, 251 id. 237, 241; *Fraw Realty Co.* v. *Natanson*, 261 id. 396, 401, 411; *Herrmann* v. *Jorgenson*, 263 id. 348, 355; *Foote* v. *Foote*, 58 Barb. 258, 262; affd., *sub nom. Foote* v. *Bryant*, 47 N. Y. 544, 550; *McClellan* v. *Grant*, 83 App. Div. 599; affd., 181 N. Y. 581; *Gallagher* v. *Gallagher*, 135 App. Div. 457, 463; affd., 202 N. Y. 572; *Matter of Michelbacher, supra; Irving Trust Co.* v. *Reikes*, 228 App. Div. 510, 513; *Isquith* v. *Isquith, Nos. 1, 2*, 229 id. 555, 561; *Matter of Van Muffling, supra.*)

I hold that the equitable title to the real property was in the decedent, that the record title of the respondent is entirely impressed with a trust in favor of the decedent and her estate, that the ownership of both the money and the realty, including the lease, is in the estate and that the executrix is entitled to the possession thereof and the absolute title thereto, subject only to the lawful provisions of the will. Where a trust is impressed upon realty, the judgment should direct a conveyance thereof by the owner of record to the owner of the equitable title upon the latter's satisfaction of any valid claim of the former for expenditures on account of such realty. (*Percy* v. *Huyck*, 252 N. Y. 168, 174.) There is no such claim with reference to the third parcel.

Justice and a full, equitable and complete disposition of the matter require that, in addition to directing the delivery of the money, I also direct an assignment of the lease and a conveyance of the realty. To determine that the estate owned the realty and then remit the executrix to some other forum for relief, would cause delay and expense and, to that extent, a denial of justice.

Such a procedure would be inconsistent with the trend of the law, as demonstrated by recent legislation and authoritative decisions, to avoid multiplicity and circuity of actions so that dispatch and efficiency in the administration of justice may be promoted. (General note and note to Code Civ. Proc. § 2510 [2472], in Report of Revision Commission to the Legislature, Feb. 9, 1914, Leg. Doc. [1914], No. 23, pp. 1 and 40; Surr. Ct. Act, § 40, subd. 9; *Matter of Raymond* v. *Davis, supra; Matter of Coombs*, 185 App. Div. 312, 314; *Matter of Malcomson, supra; Matter of Weimann*, 119 Misc. 239; *Matter of Haigh*, 125 id. 365; *Matter of Koehler*, 134 id. 532.)

The respondent will be directed to pay the executrix the sum of $500 collected by him, and to execute and deliver to the executrix an assignment of the lease and a deed of the realty to be disposed of in accordance with the provisions of the decedent's will and with the rights, if any, of creditors or others under pertinent statutes.

Settle decree.