In the Matter of the Estate of ELSIE VAN MUFFLING, Deceased.

Surrogate's Court, Westchester County, January 18, 1935.

*McLaughlin & Stickles* [*Lester D. Stickles* of counsel], for the petitioner.

*Donovan, Leisure, Newton & Lumbard* [*Philip Farley* of counsel], for the German Consul and Katharina M. Klintz.

*Frederick Walz*, for possible distributees.

*Walter F. Wood* [*Robert P. Smith* of counsel], for Adrian Van Muffling, one of the administrators and claimant.

*James G. Bagg*, special guardian.

SLATER, S. In another decision in this matter of even date, the court decided that certain persons residing in Germany are the distributees of the decedent.

The First National Bank of Mount Vernon and Adrian Van Muffling were appointed administrators on the 17th day of October, 1933. It had been supposed that there were no heirs of the decedent's blood and that Adrian Van Muffling, being a child of the decedent's husband, would take her property pursuant to the laws of descent. The proof is clear that the decedent had stated that she had no relatives who would share in her estate. On April 23, 1934, Adrian Van Muffling filed a claim for cash advances and for the value of certain shares of stock of the Quaker Ridge Homes, Inc., on the representation to him that she had no relatives. The claim was rejected by his coadministrator, the accountant herein. The amount of the estate accounted for is about $85,000.

The claimant asserts the right of the court to establish a constructive trust in his behalf and to put into action the rule that, where a confidential relation has been abused or repudiated, a court of equity will step in and redress a wrong. This is a case of a

confidence induced, not alone by the bare promise of another, but by the confidential relation existing. (*Wood* v. *Rabe*, 96 N. Y. 414, 426.) It is not the promise only, nor the breach only, but the unjust enrichment under cover of the relationship of confidence which puts the court in motion. (*Sinclair* v. *Purdy*, 235 N. Y. 245, 253; *Foreman* v. *Foreman*, 251 id. 237, 240; *Fraw Realty Co.* v. *Natanson*, 261 id. 396; *Harlem Church, etc.,* v. *Greater N. Y. Corp., etc.,* 145 Misc. 508, 514.)

In the dissenting opinion in *Fraw Realty Co.* v. *Natanson* (261 N. Y. 396, 401, at p. 412) Judge LEHMAN restates the reason for setting the court of equity in motion by saying: " Ordinarily men do not trust their property to strangers without at least requiring some evidence that the stranger is holding for them. Where there is blind trust there is usually a prior existing relationship which explains the confidence; but wherever under cover of a relationship of confidence, however created, there has been enrichment of one party, a court of equity should interpose its powers to remedy the wrong. Myriad are the circumstances which may give rise to such relationship. The parties may be united by blood, family affection, close friendship or business relations. Reputation and standing in the community may provide the element of confidence which might otherwise not be found in previous personal relations. However the relationship may have arisen, where a party accepts property knowing that it is intrusted to him because of the confidence which another places in him, there is a relationship of confidence, abuse of which should not be tolerated by a court of equity."

The instant proceeding is one of accounting. The alleged heirs and the claimant herein each claim to be the sole distributees. The two matters, *i. e.,* heirship and claim, were tried together in the accounting proceeding. Logically, the court first took proof concerning the heirs. The attorney for the claimant heirs offered affidavits taken in Germany by the attorney for the accounting administrator. This evidence was received for all purposes. Included are statements which the decedent had made to the affiants as to business transactions she had had with Adrian Van Muffling, the claimant herein, relative to money she had invested for him in real estate. By the introduction of this evidence, the door was opened for Adrian Van Muffling to testify to such transactions. (*Matter of Schlossman,* 136 Misc. 893, and cases cited.) The claimant testified to certain facts. Objection was made by the attorney who represented the so-called German heirs or distributees of the decedent that it violated the statutory prohibition (Civ. Prac. Act, § 347). The court reserved decision upon the

objection and will now decide in favor of the admission of the evidence because it again became competent when the door was opened by cross-examination.

The claimant was cross-examined at length and to such an extent by the attorney for the accountant administrator, The First National Bank of Mount Vernon, that the door was again opened so that the claimant could give testimony on the cross or redirect as to the transactions examined into. The examination of Mr. Stickles, called as a witness (he being the attorney for the accounting administrator), discloses that while cross-examining the claimant the special guardian and the attorney for the distributees, who had refused to cross-examine, had supplied him with documents which he had already offered in evidence and had suggested to him a line of examination of claimant. Another method of lifting the latch to the door. (New York Law of Proof of Transactions with Decedents, by John M. Greenfield, Jr., §§ 136, 224, 225, 247, at p. 344; *Cole* v. *Sweet*, 187 N. Y. 488; *Kings County Trust Co.* v. *Hyams*, 242 id. 405, 409, 412; *Matter of Cozine*, 104 App. Div. 182; *DeLaurent* v. *Townsend*, 214 id. 493; *Matter of Booth*, 215 id. 516, 519; *Newman* v. *Globus*, 129 Misc. 302; *Matter of McArdle*, 140 id. 257, 262.)

The question of the equitable jurisdiction of this court to determine the issue presented has been settled in favor of the court's jurisdiction. (*Matter of McArdle, supra*, and cases there cited.)

The decedent and her husband were born in Germany. The husband, Otto Van Muffling, married and by his first wife had a son Adrian, the claimant. He, the husband, was divorced and came to this country. His wife died and he then married the decedent in Philadelphia. When the claimant, Adrian Van Muffling, first came to this country in 1905 he went to live with his father and the decedent, his stepmother, at West One Hundred and Second street in New York city in a three-room flat. He was sixteen years of age. He returned to Germany twice and came back for good in 1908. With the decedent, the claimant stood in the relation of parent and child and grew up in the family in such relationship. He became a mechanical engineer.

There is no writing which evidences an agreement, and reliance must be made upon other evidence to decide whether a trust by implication has been proven. Adrian Van Muffling's equitable rights do not alone grow out of payments made as proved by his testimony. They are reinforced by the confidential relation existing and by the unequivocal acts of confirmation and estoppel made by the decedent. The confidential relationship of the parties, the youth and inexperience of the claimant, the fact that he acted without independent advice, and the injustice which would result

in case that equity did not perform for him, exist here. (*Wood* v. *Rabe, supra,* 426.)

The proof shows that he had money, that he had property in the old country and received it from time to time from his mother's estate. The father was an employee of a wholesale leather firm and received in the year 1905 a salary of $1,300. Up to 1909, inclusive, he received $1,820 per annum; in 1910, 1911, 1912 he received $2,080; in 1913 he received $2,275; from that year to 1916 he received $2,340 per annum and from year to year his salary was raised until 1923 when he received $3,530 per annum. There was some mention of a boarder, when they removed from New York city to property at Flatbush, who paid for his board the sum of $600 per year. The addition of $600 to $1,800, making $2,400, upon which four people lived and paid interest on the mortgage and taxes on the Flatbush place, would hardly make it possible for the decedent to accumulate money.

The opportunity to prove or disprove is to be weighed by the trier of the facts in determining the significance of the evidence. The evidence with regard to the decedent's living, that no real estate was purchased until after Adrian came to this country, supplies at least some basis for concluding that the money for the purchase came from him. A conclusion which might otherwise be unfounded may become definite when applied to the subject-matter and supplemented with other evidence.

The testimony of the claimant shows that the transactions between them commenced in 1907 and terminated in 1924 and were divided into five groups. The first transaction, being in February, 1907, relates to a house and adjacent lot in Flatbush. Testimony shows that he supplied the sum of $1,500 for the purchase of a vacant lot. He also supplied $3,000 toward the purchase of the house. When the lot was sold, Adrian took a purchase-money mortgage for $3,000. These lots and house were bought at a time when, according to the testimony, the decedent was without funds. The lot was sold by the decedent June 13, 1917.

On March 29, 1921, the claimant was the owner of a $4,000 purchase-money mortgage given as part consideration of the sale of a certain apartment house on Coney Island avenue, Brooklyn. On or about that date the claimant assigned the mortgage to the decedent (the assignment is recorded in the Kings county register's office, section 20, block 6749, liber 4925 of Mortgages, p. 364) upon her representation that she would convey to him certain Long Beach property. The mortgage was never reassigned. The conveyance of the Long Beach property by the decedent to the claimant was never made. Later, the decedent sold the Long Beach property

to one Shine. Shine gave her a purchase-money mortgage for $2,000, the mortgage being one of the assets of the decedent's estate in the present account of proceedings.

The next venture was in 1920 and has to do with the Harmon avenue, Pelham, property where the decedent built a home and moved into it. The claimant advanced $2,000 for the purchase of the vacant lots. Title was taken in the name of the decedent. The claimant and the decedent went into the joint venture of building the house, the claimant advancing $4,000 toward the erection of the building. The decedent paid the balance, but the title to the property remained in the name of the decedent. After the completion of the home it was occupied by the decedent, her husband and the claimant until 1926, when the claimant left the home never to return to it. Later, she sold the house.

About 1920, in another transaction, the claimant became a stockholder to the extent of $3,600 in the Quaker Ridge Homes, Inc. He owned thirty-six shares of the stock. It stood in his name. The stock certificate was indorsed in blank by the claimant and was delivered by the decedent to the buyer, Joseph C. Walter. She received mortgages from Walter, and the proof is that she never accounted to the claimant for the proceeds of the sale of the stock.

A witness, Mrs. Wight, testified that for many years she had been a close friend of the decedent and, during the period from 1910 to 1918, the decedent many times referred to the purchase of the house on Nineteenth street, Flatbush, and the lots adjoining and stated that the " lots are Adrian's; " that the decedent stated to the witness many times that she " had not a soul in the world." The witness visited the Long Beach property with the decedent where she (decedent) stated that Adrian was going to build a second story and improve the house and make it larger, and the witness saw Adrian working on the second story of the house; that she visited Pelham with the decedent and decedent pointed out the lots on Harmon avenue where the home was later built and said " they are the lots Adrian has bought " and " that Adrian and she were going to build a home on them as soon as they could possibly do it." The decedent had told her many times that she and Adrian were building the house together and that Adrian had made the plans. In one of the many visits of the witness to Westchester county in 1922, the decedent took her to the Quaker Ridge section and stated to her that she was going to show her some land at Quaker Ridge that Adrian had put money in. They went on the property, walked all over it and the witness said, " you are pretty lucky having someone to advance money to you," and the decedent in answer stated definitely that she had received in all

from Adrian $26,000 which she had used in real estate transactions. The witness also testified that she had discussed with the decedent the advisability of making a will and the decedent answered that everything she had would go to Adrian when she was dead. Similar statements were made to other witnesses as to the disposition of her property and that she had no heirs at law. At the time she was making declarations as to non-heirs, she was corresponding with her brother and sister in Germany, the original letters of which are in evidence in this case. She was a consummate deceiver.

Lester D. Stickles, the attorney for the accounting administrator, visited Germany in the summer of 1934 to make investigation, take evidence and procure copies of vital statistics relating to proof of decedent's heirs and next of kin. He procured the evidence of people who claim to be heirs at law of the decedent and also other non-related persons. It appears from this evidence that the decedent had visited Germany before and after the death of her husband, who died on April 30, 1932. She visited her husband's brother and family. She stated to the husband's brother and to his wife that she had no relatives whatever and that Adrian was the only person to be considered as her heir. At the identical visit to Germany she visited her own people. A brother of the decedent, one Peter Klintz, testified that he had received various letters from the decedent in the years 1928 to 1932; that she visited him in Cologne on four different occasions; that he addressed her in 1926 under the name of " Elisabeth Mullendorf ' till called for,' " and that the decedent told him that she did not want her husband to be aware that she had brothers and sisters. After the husband's death she was written to at her Mount Vernon address under her true name. The testimony of Mrs. Elisabeth Erfling, a niece of the decedent's husband and a cousin of the claimant, is to the effect that her cousin, the claimant, received property from his mother and became an heir to a sister of his mother, inheriting money. The evidence of Baron Ernst Van Muffling, the decedent's brother-in-law, is that Ernst Adrian, the claimant, had a fortune by inheritance from his mother's part. He also testified: " I remember that Elsie Van Muffling mentioned having received moneys from Ernst Adrian for the purpose of investment," and that she said " he [meaning Adrian] regularly handed over to her moneys forthcoming and left their investment or use with her." The evidence of the Baroness Elisabeth Van Muffling is that " in our numerous conversations, when being asked about her [decedent's] family, she always emphasized that she had no relatives whatever and also emphasized, in this connection as well as in speaking of matters of property or inheritance, that Ernst Adrian,

her husband's son by a first marriage, was to be considered as the only heir. Occasionally she also mentioned to me that Ernst Adrian, who was wealthy from the part of his mother's family, had given her moneys to be invested in real estate speculations."

The decedent had no correspondence with her own family from 1890 until after 1923. The testimony of her own brother, Peter Klintz, is to the effect that in her early life she had been a dressmaker and a costumemaker.

In equity, upon an examination of remote evidence for the discovery of any unfairness, overreaching or betrayal of a trust, much liberality is often permitted in the introduction of evidence. (*Matter of McArdle*, 140 Misc. 257, 265.) In the light of all the evidence the conditions become definite. All the transactions were " instinct with an obligation." The testimony viewed collectively leads this court to say that all " the transactions were consummated in confidence that the holder would keep the faith." I hold that there was an abuse of confidential relation. He trusted to her sense of honor.

The claimant testified that the decedent never accounted to him for the money given to her, nor did she ever repay him anything on account. (*Matter of Fee*, 151 Misc. 410.)

I hold that the estate of the decedent should be impressed with an equitable lien in favor of the claimant as follows: $1,500, advanced for the purchase of lots in Flatbush, with interest from September 4, 1908; $4,000, the amount of the mortgage on the Coney Island avenue apartment, with interest from March 29 1921; $2,000, paid for the vacant lots at Pelham, with interest from January 27, 1919; $3,600, the amount realized on the sale of the claimant's stock by the decedent in the Quaker Ridge Homes, Inc., with interest from May 10, 1922; $5,000, the amount advanced for the erection of the house at Harmon avenue, Pelham, and later sold by the decedent, with interest from January 30, 1920.

Submit decree in accordance with this opinion and decision.